AMERICAN CIVIL LIBERTIES UNION, Inc., v. KIELY, City Postmaster.

No. 196.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

Arthur Garfield Hays, of New York City (Albert E. Kane, of New York City, of counsel), for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Samuel C. Coleman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The postmaster of New York, acting under instructions of the Postmaster General, refused to receive from the complainant for transmission through the mails a quantity of envelopes because of matter printed on the face of the envelopes.

The envelopes sought to be mailed contained a pamphlet advocating the pardon of Tom Mooney, who was convicted in the state of California for exploding a bomb in San Francisco on July 22, 1916, whereby ten people were killed, and was thereafter sentenced to life imprisonment. The pamphlet purports to show requests for pardon by jurymen, by the judge who conducted the trial, as well as by other public officials, and contains detailed arguments attempting to establish that the conviction was obtained upon perjured testimony. It is not contended that the pamphlet was in itself nonmailable, but it is said that the envelope was properly excluded from the mails because it had on its face these words: "Pardon Tom Mooney—Innocent," "The Horror of 13 Years Unjust Imprisonment," and around the border, the words: "Tom Mooney Frame-up," "A Terrible Indictment," "California's Shame," "Justice California Style."

The Postmaster General and the postmaster relied on section 212 of the United States Criminal Code (18 USCA § 335) which declares: "All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which or any * * * epithets, terms, or language of * * * libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, are hereby declared nonmailable matter, and shall not be conveyed in the mails nor delivered from any post office. * * * "

The complainant is a New York membership corporation seeking to promote the pardon of Mooney. It contends that its purpose is aided by having on the envelopes which contain the pamphlets that it desires to circulate sensational inscriptions which will attract the attention of the public, and it may be that such things aid its propaganda and may in some cases prevent the envelopes and their contents from being thrown into waste paper baskets unread by the recipients.

There can be no doubt that the United States may prohibit the carriage by mail of such things as it pleases. The question is whether the inscriptions on the envelopes in truth are "libelous, scurrilous, defamatory * * * or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another." If they are not of this sort, the Postmaster General cannot exclude them, though he is an official required to use his discretion in determining whether a particular publication is nonmailable, and "his decision must be regarded as conclusive by the courts, unless it appears that it is clearly wrong." Masses Publishing Co. v. Patten (C. C. A.) 246 F. 24, 33, L. R. A. 1918C, 79, Ann. Cas. 1918B, 999; Bates & Guild Co. v. Payne, 194 U. S. 108, 24 S. Ct. 595, 48 L. Ed. 894; Smith v. Hitchcock, 226 U. S. 58, 33 S. Ct. 6, 57 L. Ed. 119.

Upon the rejection of the envelopes by the postmaster of New York, the complainant brought suit to restrain the defendant from treating them as nonmailable, and moved for an injunction pendente lite. The defendant likewise moved to dismiss the bill

of complaint on the ground that it failed to state a cause of action. The District Judge denied the application for an injunction and granted the motion to dismiss the bill in a memorandum in which he said:

"I think the word 'defamatory' as used in the statute is not limited to instances where specific individuals may be identified as the objects of defamation. The envelope is certainly defamatory of the State of California and of some undefined persons therein who have had to do with the Mooney case. Under these circumstances I think the postal authorities were within their discretion in excluding the envelopes."

The meaning and scope of the statute is tested by this appeal, and we must determine whether the words inscribed on the envelopes in question are "libelous," "scurrilous," or "defamatory," or are "calculated to reflect injuriously upon the character or conduct of another." These terms necessarily must be read in a legal sense, and the general field of libel would seem to furnish the proper background for their interpretation. The apparent object of section 212 of the Criminal Code (18 USCA § 335) was to prevent wanton attacks upon individuals who could be identified from the inscription on the envelope. Section 212 has nothing to do with the contents of the envelope, and only relates to what is on the cover. The contents may be mailed freely, provided they are not obscene or do not constitute a step in a scheme to defraud. U. S. Criminal Code, §§ 211 and 215 (18 USCA §§ 334, 338).

It is an old rule of the common law that, where words complained of reflect on a class of persons generally without making it evident that every person of the class is referred to, no member can maintain an action. Sir John Borne's Case and Jones v. Davers, Cro. Eliz. at page 497; Eastwood v. Holmes, 1 F. & F. 347; Le Fanu v. Malcomson, 1 H. L. C. 637; Wakley v. Healey, 7 C. B. 591; O'Brien v. Eason, 47 Ir. L. T. 266. When, however, the words reflect on every member of a class, each one may have an action, because the charge is made broadly against all. Ryckman v. Delavan, 25 Wend. (N. Y.) 186; Weston v. Commercial Advertiser Association, 184 N. Y. 479, 77 N. E. 660.

In the present case we may consider only the words on the envelope. We cannot speculate as to what person, if any, the words are aimed at or determine the fact aliunde. From the words themselves it is impossible to say who is charged with any fault. A "frameup" may mean a conspiracy on the part of witnesses or of public officials, or of some or all of both, or the term may suggest persons back of the prosecution who supplied evidence. Moreover, aside from the manifest indefiniteness as to those referred to, the word "frameup" is itself of vague signification.

"California's Shame" and "Justice California Style" are likewise phrases which go no farther than to level a general criticism at the result of the Mooney trial and at the way trials are conducted in California. While the truth or falsity of the words cannot affect the case (Warren v. United States [C. C. A.] 183 F. 718, 33 L. R. A. [N. S.] 800), and the complainant has no right to have letters carried by mail, on the envelopes of which defamatory words are printed, yet the words, to be defamatory within the meaning of the statute, must charge some identifiable person with something. Here the inscription contains general charges against a state, a system, or an indefinite class.

In our opinion, the act relates to persons and not to systems of administration or other abstractions; and we doubt whether it has ever been supposed that the general and almost daily criticism of failure adequately to administer justice and other like strictures with which the press abounds are, without more, to be regarded as libelous. Doubtless such things are from time to time said of most states and judicial systems in the Union.

We are referred to no decision which holds that a state can sue for libel at common law. A municipal corporation has no such right of action (Mayor v. Williams, [1891] 1 Q. B. 94), unless it is libeled as to matters which affect statutory powers given it to trade. Gatley, Libel and Slander, p. 417. Indeed, we do not understand that it is contended here that the state of California would have a cause of action for anything inscribed upon the envelopes in question. Moreover, the words in the act of 1872 (Act June 8, 1872, c. 335, § 148, 17 Stat. 302) which prohibited "disloyal devices" were omitted from the later revisions, and for this reason it seems unlikely that the words "libelous" and "defamatory," appearing in the present act, were intended to cover defamatory words written about a state.

The words "scurrilous" and "calculated * * * to reflect injuriously upon the character or conduct of another" add little

to the terms "libelous" and "defamatory," — and, like "libelous" and "defamatory," afford no justification for departmental action unless they are related to some identifiable person. The natural meaning of the text, as well as the rule of ejusdem generis, would seem to limit their application to identifiable persons. But, in any event, it cannot be supposed that a state is referred to by such a clause as "calculated * * * to reflect injuriously upon the character or conduct of another." The word "another" must relate to some person, and the use of that word in the general and sweeping clause of section 212 (11 USCA § 335) makes it plain that defamation of a state is not one of the things covered by the statute. Such words as "character" and "conduct" do not describe attributes of political divisions.

Something may be said against allowing propaganda to be placed on envelopes for transmission through the mails, but we see nothing to prevent doing this except as to matter covered by section 212 of the United States Criminal Code (11 USCA § 335). The envelopes in question do not seem to come within the prohibitions of that section.

The decree dismissing the bill of complaint and the order denying the motion for a preliminary injunction are reversed, and an injunction pendente lite is granted.