**SHOEMAKER v. BURKE, Postmaster, et al.**

**No. 6895.**

United States Court of Appeals for the District of Columbia.

Decided June 1, 1937.

Frederick A. Ballard, of Washington, D. C., for appellant.

Leslie C. Garnett and Howard Boyd, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a decree of the District Court of the United States for the District of Columbia, dismissing the appellant's bill of complaint upon a motion alleging lack of substance.

The appellant was plaintiff below and filed a bill of complaint against the appellees Vincent C. Burke, as Postmaster of Washington, D. C., and James A. Farley, as Postmaster General of the United States, praying for an injunction to restrain the defendants from enforcing an order withdrawing from the mails a letter tendered by the appellant for mailing, on the envelope of which was affixed a sticker bearing the words, "I don't read Hearst," these words being encircled by a curved line.

The appellant undertook to mail this letter and similar letters but was denied mailing privileges by force of the Postmaster General's determination that the letters were subject to the prohibition of the Act approved June 18, 1888, § 2, as amended, title 18 U.S.C.A. § 335, which provides as follows: "All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which, any delineations, epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, are hereby declared nonmailable matter, and shall not be conveyed in the mails nor delivered from any post office nor by any letter carrier, and shall be withdrawn from the mails under such regulations as the Postmaster General shall prescribe. Whoever shall knowingly deposit or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable matter, or shall knowingly take the same or cause the same to be taken from the mails for the purpose of circulating or disposing of or aiding in the circulation or disposition of the same, shall be fined not more than $5,000, or imprisoned not more than five years, or both."

This statute first prohibits the mailing of any matter otherwise mailable by law if upon the envelopes there is written or printed any delineations, epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character. It is not contended that the inscription in question is subject to condemnation under any of these provisions. The statute further prohibits the mailing of any matter otherwise mailable if upon the envelopes thereof there is written or printed any matter calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another.

The Postmaster General held that the inscription upon the sticker, to wit, "I don't read Hearst" fell within the provisions of the latter subdivision, for the reason that it was calculated by the terms and obviously intended to reflect injuriously upon the character or conduct of another.

We are of the opinion that the decree of the lower court dismissing the appellant's bill of complaint should be sustained.

In the first place we may say that in our opinion the inscription on the sticker which was attached to the envelope in question was "calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another." It is clear that this inscription bore no relation to the information required by the Postmaster when receiving and sending the mail to the addressee. It was a purely gratuitous intrusion of an expression of opinion by the writer denunciatory in its nature of Hearst and the Hearst publications. It was an effort to induce others to join in the same opinion and to agree with the writer in condemning the character and conduct of Hearst. Accordingly, it was obviously intended to reflect injuriously upon the character and conduct of another, and it is plain that it could have no other purpose or effect.

The appellant cites the case of American Civil Liberties Union v. Kiely (C.C.A.) 40 F.(2d) 451, 453, wherein it was held that matter otherwise defamatory when used with reference to a state does not come within the purview of the present statute, but that the statute applies only to reflections upon individual persons and not to reflections upon a state. The court said: "In our opinion, the act relates to persons and not to systems of administration or other abstractions."

This reference does not seem to apply to the present case. The implied denunciation herein does not relate to a state or an abstraction, but to a well-known publisher and by innuendo to his publication.

■ Moreover, it should be observed that the authority to pass upon such a subject is in the first instance intrusted by statute to the Postmaster General, and that his decision thereon is conclusive unless he has exceeded his authority or the court should be of the opinion that his action was clearly wrong.

In Bates & Guild Co. v. Payne, 194 U. S. 106, 24 S.Ct. 595, 597, 48 L.Ed. 894, in a suit brought to compel the Postmaster General to transmit through the mails, as second-class matter, a publication alleged to be a periodical, the bill was discharged with the following statements:

" * * * where Congress has committed to the head of a department certain duties requiring the exercise of judgment and discretion, his action thereon, whether it involve questions of law or fact, will not be reviewed by the courts unless he has exceeded his authority or this court should be of opinion that his action was clearly wrong. * * *

"The rule upon this subject may be summarized as follows: That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing. * * *

" * * * While, as already observed, the question is one of doubt, we think the decision of the Postmaster General, who is vested by Congress with the power to exercise his judgment and discretion in the matter, should be accepted as final."

See, also, Smith v. Hitchcock, 226 U.S. 53, 33 S.Ct. 6, 57 L.Ed. 119; Masses Publishing Co. v. Patten (C.C.A.) 246 F. 24, L.R.A.1918C, 79 Ann.Cas.1918B, 999.

The decree of the lower court is affirmed.

Affirmed.

STEPHENS, Associate Justice.

I dissent. I am unable to understand how the conclusion can be reached that the statement by an unknown person "I don't read Hearst" was "a purely gratuitous intrusion of an expression of opinion by the writer denunciatory in its nature of Hearst and the Hearst publications." And I am unable to understand how such a statement can be said to be, within the statute, "calculated by the terms . . . and obviously intended to reflect injuriously upon the character or conduct . . ." of Hearst or the Hearst publications. Certainly the statement does not in terms say anything at all concerning character or conduct. Even if the writer's reasons for not reading Hearst had been made a part of the terms of the statement, still it might or might not reflect injuriously upon the character or conduct of Hearst or his publications, depending upon who the writer was and what the reasons were. As stated by Judge Augustus Hand in American Civil Liberties Union, Inc., v. Kiely (C. C.A.) 40 F.(2d) 451, 453, the words, to be within the statute, "must charge some identifiable person with something." It is, in my opinion, wholly speculative to say that the statement "I don't read Hearst" charges Hearst or the Hearst publications with anything. In effect the majority is ruling that whoever, and for whatever undisclosed reasons, says "I don't read Hearst" necessarily reflects injuriously upon the character or conduct of Hearst or his publications.

I do not assume by the foregoing to express approval of statements such as the one here involved, or of their use on mail matter; presumably the statement was not kindly intended; and I am aware of the rule that under the statute the decision of the Postmaster General, as an official required to use discretion in determining whether a particular publication is nonmailable, "must be regarded as conclusive by the courts, unless it appears that it is clearly wrong." American Civil Liberties

Union, Inc. v. Kiely, supra, and cases therein cited. But the question here is not what statements merit approval or merit use on mail matter. The question is what statements are by the statute forbidden to be placed on mail matter; and I think that the statute clearly does not forbid the words in question, and that in the absence of legal limitation the right of free speech permits them.