## SMITH AND OTHERS, TRADING UNDER THE FIRM NAME OF STREET & SMITH, APPELLANTS, *v.* HITCHCOCK, POSTMASTER–GENERAL.

## FRANK TOUSEY, PUBLISHER, A CORPORATION, *v.* SAME.

.APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 31, 32. Argued November 5, 6, 1912.—Decided November 18, 1912.

Even though a question of law be raised by an order of the Postmaster-General excluding matter from the mails, the court will not interfere unless clearly of the opinion that the order is wrong. *Bates & Guild Co.* v. *Payne,* 194 U. S. 106.

Every series of printed papers published at definite intervals is not necessarily a periodical within the meaning of the provisions of the act of March 3, 1879, c. 180, 20 Stat. 355, defining second-class mail matter.

Books that are expressly embraced by § 17 of the act of March 3, 1879, as third-class matter and subject to the higher rate of postage cannot be made second-class matter by simply publishing them at regular intervals even though, as in this case, purporting to be a series of adventures of the same person. *Houghton* v. *Payne,* 194 U. S. 88.

" Periodical" as used in the act of March 3, 1879, implies that no single number of a series is a complete book in itself.

As a general rule, with few exceptions, a printed publication is a book within the meaning of § 17 of the act of March 3, 1879, when its contents are complete in themselves, deal with a single subject, need no continuation and have appreciable size; and so *held* that the publications involved in this case are books and not periodicals.

Where the point to be decided is a pure question of law which can be reviewed by the courts, the Postmaster-General satisfies the requirements of the act of March 3, 1901, c. 851, 31 Stat. 1099, 1107, by simply hearing the party claiming to be aggrieved by an order excluding matter from the mail; and one so heard and who is not prevented from offering material evidence cannot complain in the court reviewing the order that he was denied a hearing under the act.

34 App. D. C. 521 and 535, affirmed.

THE facts, which involve the validity of orders of the Postmaster-General excluding appellants' publications from second-class mail privileges, are stated in the opinion.

*Mr. J. J. Darlington* and *Mr. H. H. Glassie* for appellants:

The order excluding appellants' publication from the second class was not grounded on any provision of the statute, but upon superadded limitations not found therein. It is therefore void.

The exclusion of appellants' publications, whereby they are indirectly destroyed, cannot be justified upon the pretext of a personal literary and moral censorship unknown to the law. *Lewis Pub. Co.* v. *Wyman,* 152 Fed. Rep. 787, 792; *Weybridge* v. *Addison,* 67 Vermont, 569, 575; *Nat. Ry. Pub. Co.* v. *Payne,* 30 Wash. Law Rep. 341; *Wedderburn* v. *Bliss,* 12 App. D. C. 485, 493; *Garfield* v. *Spalding,* 32 App. D. C. 154, 158; *Myer* v. *Peabody,* 212 U. S. 78, 84; *Londoner* v. *Denver,* 210 U. S. 373, 385; 15 Op. Atty.-Gen. 346.

The exclusion was really grounded not on the act of March 3, 1879, but upon the amended regulation of July 17, 1901, already adjudged void. It is conceded that appellant's publication complies with every specified condition prescribed by this statute as a test for admission. There has been a long-continued and general acceptance of this publication as a periodical. The construction of the term "periodical" as accepted and acted on by the Post Office Department when appellant's publication was admitted is a construction contemporaneous with the act of March 3, 1879, itself, and thereafter followed for twenty years. That construction was, moreover, the established construction of the same term in prior postal statutes and, as such, was deliberately and studiously adopted by Congress in the framing of this act. *Mason* v. *Fearson,* 9 How. 248, 258; *Reiche* v. *Smythe,* 13 Wall. 162, 164; *The Abbottsford,* 98 U. S. 440, 444; *Claflin* v. *Commw. Ins. Co.,* 110

U. S. 90, 93; *New Haven R. R. Co.* v. *Interstate Com. Com.;* 200 U. S. 361, 401; *United States* v. *Falk,* 204 U. S. 143, 152; *United States* v. *Hermanos,* 209 U. S. 337, 339; *White-Smith Co.* v. *Apollo Co.,* 209 U. S. 1, 14; *B. & O. Southwestern R. R.* v. *United States,* 220 U. S. 94, 103; *United States* v. *Press Publ. Co.,* 219 U. S. 1, 11; *Chesapeake & Pot. Tel. Co.* v. *Manning,* 186 U. S. 238, 243; *Holy Trinity Church* v. *United States,* 143 U. S. 457, 463; *Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 559; *Platt* v. *Union Pac. R. Co.,* 99 U. S. 48, 64; *Blake* v. *Nat. Banks,* 23 Wall. 307, 319; *Schell's Ex.* v. *Fauche,* 138 U. S. 562, 572; *United States* v. *Hill,* 120 U. S. 169, 180; *Hahn* v. *United States,* 107 U. S. 402, 406; *Butterworth* v. *United States,* 112 U. S. 50, 67; *Philbrick* v. *United States,* 120 U. S. 52, 59; *Bate Refg. Co.* v. *Sulzberger,* 157 U. S. 1, 44; *United States* v. *Haley,* 160 U. S. 136, 141, 145; *Hewitt* v. *Schultz,* 180 U. S. 139, 157; *Midway Co.* v. *Eaton,* 183 U. S. 602, 609; *United States* v. *Finnell,* 185 U. S. 236, 244; *United States* v. *Union P. R. Co.,* 91 U. S. 72, 79; *United States* v. *Freight Ass'n,* 166 U. S. 293, 318; *Chiles* v. *Ches. & O. Ry.,* 218 U. S. 71, 76; *Welton* v. *Missouri,* 91 U. S. 275, 282; *Railway Pub. Co.* v. *Payne,* 30 Wash. Law Rep. 338; *Payne* v. *Railway Pub. Co.,* 20 App. D. C. 581; *Barden* v. *North. Pac. R. R.,* 154 U. S. 288, 322; *Kilbourn* v. *Thompson,* 103 U. S. 176, 196, 199; *Legal Tender Cases,* 12 Wall. 457, 554.

Irrespective of evidence as to intent of Congress, appellants' publication is a periodical in the ordinary meaning of the term.

The tests now set up by the Department are not within the *ratio decidendi* of *Houghton* v. *Payne,* but additions to the requirements of the statute.

The exclusion is not based upon any settled, definite or uniform construction of the statute; but arbitrarily discriminates between publications essentially similar. *Payne* v. *Houghton,* 22 App. D. C. 234, 239; *Houghton*

v. *Payne*, 194 U. S. 88, 98; *Ogden* v. *Saunders*, 12 Wheat. 213, 233; *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429, 574; *Brooks* v. *Marbury*, 11 Wheat. 28, 91; *Carroll* v. *Carroll*, 16 How. 275, 287; *Wis. &c. R. R.* v. *Price Co.*, 133 U. S. 496, 509; *Hans* v. *Louisiana*, 143 U. S. 1, 20; *Cross* v. *Burke*, 146 U. S. 82, 87; *United States* v. *Wong Kim Ark*, 169 U. S. 649, 679; *Downes* v. *Bidwell*, 182 U. S. 244, 259; *Harriman* v. *Nor. Securities Co.*, 197 U. S. 244, 291; *Public Clearing House* v. *Coyne*, 194 U. S. 497, 507; 27 Op. Atty.-Gen., p. 53.

The Postmaster-General has no power, by misconstruction of law, to take away from the citizen his positive legal right to have mail matter transported at the rate fixed by statute. Such mistake of law does not bind the courts or preclude their granting relief.

The right to post mail matter at the rates established by Congress is a fixed legal right which cannot be impaired by the act of an administrative officer. The definition of a word of common speech used as a statutory term is a pure question of law. *Smith* v. *Powditch*, 1 Cowper, 182; *Stock* v. *Harris*, 5 Burrows, 2711; *Rowning* v. *Goodchild*, 2 Wm. Black. 907, 910; *Barnes* v. *Foley* [1768], 4 Burrows, 2149; *Jones* v. *Walker* [1777], 2 Cowper, 624, 626; *Payne* v. *Ry. Pub. Co.*, 20 App. D. C. 581, 597, 599; *Morrill* v. *Jones*, 106 U. S. 466; *Teal* v. *Felton*, 12 How. 284, 291; *Am. School &c.* v. *McAnnulty*, 187 U. S. 109; *Sandford* v. *Sandford*, 139 U. S. 642, 647; *Quimby* v. *Conlan*, 104 U. S. 420, 426; *Moore* v. *Robbins*, 96 U. S. 530, 535; *Shepley* v. *Cowan*, 91 U. S. 330, 340; *Johnson* v. *Towsley*, 13 Wall. 72; *Silver* v. *Ladd*, 7 Wall. 217; *Roberts* v. *United States*, 176 U. S. 221, 231; *United States ex rel.* v. *West*, 19 App. D. C. 333; *Garfield* v. *Goldsby*, 211 U. S. 249, 261; *McCulloch* v. *Maryland*, 4 Wheat. 316, 413; *State* v. *Stevens*, 69 Vermont, 411; *Taylor* v. *Horst*, 52 Minnesota, 300; *Commonwealth* v. *Sullivan*, 146 Massachusetts, 142; *Marvel* v. *Merritt*, 116 U. S. 11.

*The Solicitor General* for the appellee.

*The former Solicitor General, Mr. Frederick W. Lehmann,* also filed a brief for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are bills to restrain the Postmaster-General from revoking orders according second-class mail privileges to the several plaintiffs—in the first named case in respect of a series of publications issued under the name of the Tip Top Weekly, in the second in respect of a similar one entitled Work and Win. The ground of the bills is that the privileges were annulled without granting the hearing required by the act of March 3, 1901, c. 851, 31 Stat. 1099, 1107, and that the publications are periodical publications within the meaning of the act of March 3, 1879, c. 180, §§ 7, 10, 14; 20 Stat. 355, 358, 359, and therefore must be carried as second-class matter, by the very terms of the law.

We will take up the second question first. The facts are not in dispute and are alike in the two cases. The publications are weekly, each containing a single story complete in itself, but the same character is carried through the series and the reader is led by announcements to expect further tales after the one before him. Most of the stories are by the same author. The element of sequence may be indicated by a few of the titles in the Tip Top Weekly: Frank Merriwell in Arizona; or, the Mysteries of the Mine. Frank Merriwell's Friend; or, Muriel the Moonshiner. Frank Merriwell's Double; or, Fighting for Life. Frank Merriwell Meshed; or, the Last of the Danites. Frank Merriwell's Magic; or, the Pearl of Tangier. Frank Merriwell in London; or, The Grip of Doom, etc., etc. There is nothing else in a number except a roll of honor or list of some of those who have

endeavored to increase the circulation of the series, laudatory letters with insignificant comments, and a page or two of inquiries as to physical culture purporting to come from readers, with short replies, all more or less incident to the muscular tenor of the tales. The publications measure about eleven by eight inches on the outside, are said to contain about thirty thousand words, have thirty-two pages, including a page of advertisement and exclusive of the cover, of which twenty-six are filled by the story. The front cover bears a colored illustration of some incident narrated within.

Thus a question of law is raised, although as suggested in *Bates & Guild Co.* v. *Payne,* 194 U. S. 106, 108, we should not interfere with the decision of the Postmaster-General unless clearly of opinion that it was wrong. *Ibid.* 110. *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94, 106. *Public Clearing House* v. *Coyne,* 194 U. S. 497, 509. We have no such clear opinion, as the decision is pretty nearly if not wholly sustained by *Houghton* v. *Payne,* 194 U. S. 88, and *Smith* v. *Payne,* 194 U. S. 104. Indeed the latter case dealt with The Medal Library, which was a periodical publication of several issues of the Tip Top Weekly bound together; as the principal plaintiff now puts it, in book form, and it is true, reprinted in a different size and shape. Some attempt was made to reargue the law of the decisions just cited, but we do not feel called upon to reopen the discussion in that part of the appellants' brief.

It must be taken as established that not every series of printed papers published at definite intervals is a periodical publication within the meaning of the law, even if it satisfies the conditions for admission to the second class set forth in § 14. *Houghton* v. *Payne,* 194 U. S. 88, 96. It is established by the same authorities, that books, that are expressly embraced in mail matter of the third class by § 17 and so made liable to a higher rate of postage,

cannot be removed from that class and brought into the second by the simple device of publishing them in a series at regular intervals of time. It was suggested to be sure that the distinction was between reprints of well-known works and new matter, but we can see nothing in that; neither do we find much weight in the identity of authorship, the retention of the name of the hero through successive tales, or the ever renewed promise of further wonders in the next. All these might co-exist and yet each number might be a book, and if so it goes into the third class. "Mail matter of the third class shall embrace books." § 17.

The noun periodical, according to the nice shade of meaning given to it by popular speech, conveys at least a suggestion if not a promise of matter on a variety of topics, and certainly implies that no single number is contemplated as forming a book by itself. But we can approach the question more profitably from the other end, and shall have gone as far as we need when we decide whether the numbers exhibited constitute so many books. The word book also, of course, has its ambiguities, and may have different meanings according to the connection in which it is used. For purposes of copyright the common monthly magazines may be books, yet they are not so under the present § 17. As books are not turned into periodicals by number and sequence, the magazines are not brought into the third class by having a considerable number of pages stitched together. Without attempting a definition we may say that generally a printed publication is a book when its contents are complete in themselves, deal with a single subject, betray no need of continuation, and, perhaps, have an appreciable size. There may be exceptions, as there are other instances of books. It hardly would be an exception if, where the object is information and the subject-matter is a changing one, a publication periodically issued giving information for

the time should be held to fall into the second class. From this point of view the Tip Top Weekly and Work and Win are books. They are large enough to raise no doubt on that score; each volume is complete in itself and betrays no inward need of more, notwithstanding that, as in the highwayman stories of an earlier generation, further adventures to follow are promised at the end.

The decision that these weeklies are books shortens what needs to be said as to the sufficiency of the hearing. The parties were notified that they would be granted a hearing at the office of the Third Assistant Postmaster-General, Washington, D. C., at a fixed day and hour, to show cause why the admission to the second class should not be revoked and the third class rate of postage charged, on the ground that the issues were not periodical publications but were books. They sent a representative to Washington who left a printed response in advance, asking for further opportunity for argument if the authorities were not satisfied, and who called at the appointed time. He was referred to the Chief of the Classification Division, the proper person. Rev. Stat., § 161. Postal Laws and Regulations, Ed. 1902, §§ 6, 19, subsect. 1, 8. He saw him and asked if the brief had been received, was answered yes and then asked if the other had any questions to ask and was answered no. He presented a pamphlet, 'The Influence of the Dime Novel' and departed, offering no further argument, seemingly somewhat aggrieved at not having seen the Third Assistant Postmaster-General in person. Subsequently, the Assistant Attorney-General for the Post Office Department was consulted by the officials and in accordance with his opinion the order was issued which the plaintiffs seek to restrain.

The matter was argued to us with some feeling, and it is not impossible that the interview gave an impression of official indifference. But the plaintiffs allege in their bills that the question was a pure question of law; it was a ques-

tion that they had a right to have reviewed and have had reviewed in this court; it was clearly defined; the official was not called on to state reasons or to discuss—his only duty was to hear, and beyond offering the printed brief the plaintiff's representatives showed no desire to be heard. This is not a case in which even by manner or indirection the plaintiffs were prevented from offering material evidence. The facts and the question were as plain then as now. The conclusion reached was right, and in the circumstances disclosed we are of opinion that the plaintiffs had no cause to complain.

*Decrees affirmed.*