MASSES PUB. CO. v. PATTEN.

(Circuit Court of Appeals, Second Circuit. August 6, 1917.)

1. COURTS ⬗405(15)—CIRCUIT COURT OF APPEALS—STAY OF INJUNCTION—AUTHORITY OF COURT.

Under Judicial Code (Act March 3, 1911, c. 231) § 129, 36 Stat. 1134 (Comp. St. 1916, § 1121), declaring that where, upon a hearing in equity in a District Court, an injunction shall be continued, refused, or dissolved, an appeal may be taken from such order to the Circuit Court of Appeals, but that the proceedings in other respects in the court below shall not be stayed, unless otherwise ordered by that court or by the appellate court, a judge of the Circuit Court of Appeals may, on appeal from an order granting an injunction pendente lite, stay the operation of the same.

2. INJUNCTION ⬗75—SUBJECT OF RELIEF.

Equity has jurisdiction to grant an injunction against an order of the Postmaster General excluding a publication from the mails, solely to prevent irreparable pecuniary damage.

3. INJUNCTION ⬗75—ACTIONS—NATURE OF ACTION.

An action against a postmaster to enjoin him from excluding a publication from the mails, pursuant to the direction of the Postmaster General, is not technically one against the sovereign.

4. COURTS ⬗405(15)—CIRCUIT COURT OF APPEALS—STAY OF INJUNCTION—PROPRIETY.

Plaintiff sued to prevent defendant postmaster from excluding his publication from the mails, pursuant to the order of the Postmaster General. Before decision was rendered in the District Court, plaintiff requested defendant to return the withheld magazines; other arrangements for distribution having been made. Plaintiff's bill, however, was not withdrawn. *Held* that, on appeal from an order granting an injunction pendente lite restraining defendant from excluding plaintiff's publication from the mails, the operation of the injunction should be stayed on application to a judge of the Circuit Court of Appeals, for plaintiff's bill still sought substantial relief, and, if effect should be given to the injunction, the question would become moot, for the controversy continued only so long as plaintiff's publications were excluded from the mails.

5. INJUNCTION ⬗75—ISSUANCE—RIGHT TO ISSUE.

The courts will not by injunction interfere, except in the clearest cases, with the action of the great executive departments of the government in interpreting laws affecting the government.

6. POST OFFICE ⬗22—MAILS—CARRIERS.

In respect to the mails, the United States is not a common carrier, but is pursuing a high governmental duty, and it is at least questionable whether the government can be judicially compelled to assist in the dissemination and distribution of a publication which proclaims itself revolutionary.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. Appeal and Error ⟨⟩458(3)—Stay of Injunction—Exclusion of Mail Matter.

Plaintiff's publication asserted that laws passed by the United States for the creation of military forces, and the prosecution of war violated the fundamental rights of any free people, that conscription is the destruction of youth, democracy, and labor, and the desolation of the family, and that the United States has attempted to ensnare Russia into a continuance of war for purposes prejudicial to true democracy, and that persons who have denied and resisted the laws, having military success as their object, are worthy of admiration and possible emulation. The publication, however, did not urge resistance to the laws. Act June 15, 1917, forbids any one from willfully causing insubordination, disloyalty, mutiny, or refusal of duty in the military and naval forces of the United States. *Held* that, though plaintiff's publication did not expressly urge resistance to conscription, nevertheless, as it tended in that direction, and articles tending to arouse insubordination and disloyalty in the military and naval forces are unmailable, an order enjoining a postmaster from giving effect to the order of the Postmaster General excluding plaintiff's publication from the mails should be stayed, an appeal having been taken to the Circuit Court of Appeals, for plaintiff, having secured other means of distribution, could be compensated by pecuniary damages, and public interest demands protection against seditious articles.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Masses Publishing Company against Thomas G. Patten. From an order granting an injunction pendente lite, defendant appeals. On motion to stay injunction. Stay continued.

See, also, 244 Fed. 535.

E. B. Barnes, Asst. U. S. Atty., of New York City, for the motion. G. E. Roe, of New York City, opposed.

Before HOUGH, Circuit Judge.

HOUGH, Circuit Judge. This motion will be considered under the following heads: I. The practice under the statute. II. The present condition of this litigation as to its object and subject-matter. III. The fact findings of the District Court, and the conclusions there drawn therefrom. IV. The law as suggested to me by those facts. V. The propriety of this motion under the circumstances thus .developed, in respect of (1) the rights of parties; (2) the public interests.

[1] I. After considerable experience in appellate practice, and such recent inquiry as I have been able to make, no other instance (under section 129, Judicial Code) of application to a judge of the appellate court to stay an appealed order of this nature is known to me. Such stays, granted by the trial judge, are not uncommon; I have, myself, awarded not a few. They rest on the belief that doubtful questions of law, or difficult contests of fact (or both) are presented by the record, and that the relations of the parties, or exigencies of business are such that (perhaps by the giving of security) no injury will result from letting matters remain in statu quo (except for opinion filed) until decisive action can be had in the Court of Appeals.

There can be no difference in principle, between such an application to the trial judge, and a similar one addressed to a member of the appellate court. Indeed, I think a somewhat stricter rule should justly

apply. The trial judge may and often does feel that his findings of fact reached with travail of conscience, may not be unassailable in the view of others equally capable; yet, having done his best, he expresses no misgivings, though they exist and strongly move him to grant the stay.

But one who did not hear the case fully tried and argued, has, I think, small right to base action on facts. Except in the extremest cases, the facts must be assumed as reported from the lower court, whether through judge or jury. Any other attitude on the part of the judge ad quem, would convert the motion into a species of irregular, and often indecent, new trial. For these reasons, it is held that for present purposes, the propriety of granting the stay asked, rests on a case whose facts are literally as found by the District Court. And by facts, I mean, not only facts physical, phenomena seen or heard, but mental conditions or intents, so far as definitely stated.

[2-4] II. This action relates only to an alleged property right; i. e., the claim of a New York corporation to have certain second-class matter forwarded to destination through the United States mail. Equity is resorted to solely to prevent irreparable pecuniary damage. Defendant justifies under an order of the Postmaster General, and the Department of Justice defends; but all this does not prevent the suit from being one between private parties, in the same sense as that phrase is true of actions against collectors of internal revenue for illegal exaction of taxes. The action is not against the sovereign, technically.

What the bill demanded, therefore, was that the mail aforesaid, viz., sundry copies of the "Masses," should be sent forward; and the District Court so ordered on July 26th. It now appears that on the day before (decision being known) plaintiff requested defendant to give back the withheld magazines, and not forward them; other arrangements for distribution having been made.

This means that plaintiff no longer desires the only avowed object of action; the business foundation of the suit has dropped out. But it remains true that the obligation to distribute this particular issue of the "Masses" has a most important bearing on any postmaster's duty to forward future or similar publications. Therefore, as long as the prayer of the bill is unfulfilled, plaintiff has a legally real subject of litigation, although it further appears that plaintiff is not now exposed to any loss not coverable by damages already liquidated or ascertainable.

Defendant's situation, however, is quite different. The order appealed from, if complied with, fulfills the whole object of suit. If reversed, no restitution or restoration of status quo is possible; and in my judgment the appeal becomes a futility, presenting to the appellate court nothing but an interesting moot point. A court may hold a case sub judice, until it becomes moot. The Supreme Court did so lately, in the well-known habeas corpus taken out by Hon. H. Snowden Marshall. 243 U. S. 521, 37 Sup. Ct. 448, 61 L. Ed. 881. But could it be pretended that the Supreme Court should or could have taken cognizance of that appeal, if brought on for argument after the expiration of the Congress which proceeded against Mr. Marshall? I

think not, and therefore strongly incline to the view that this is the rare instance in which an appeal without a stay is not only futile, but legally impossible; yet the statute gives the absolute right of appeal.

[5-7] III. The facts found may be imperfectly, but sufficiently, summarized thus: Taking certain pictures and articles in this magazine, especially objected to by defendant, and drawing no inferences from the general tone and previous issues of the periodical, the books now lying undelivered in the post office, and the sole subject of this suit, assert that the laws of the United States passed for the creation of military forces and the prosecution of war, violate "the fundamental rights of any free people"; that conscription especially "is the destruction of youth, democracy, and labor, and the desolation of the family"; that the United States has attempted to "ensnare" Russia into "a continuance of war for purposes prejudicial to true democracy"; that persons (naming them) who have defied and resisted the laws having military success as their object, and been duly convicted or otherwise punished for such offenses, are worthy of "admiration" and "possible emulation."

It is further found that these specified writings and pictures "may interfere with the success of the military forces of the United States," because this publication and its kind "enervate public feeling at home (which is their chief purpose), and encourage the success of the enemies of the United States abroad (to which they are usually indifferent)." But all these statements of plaintiff are not "of fact"; they are "within the range of opinion and of criticism; they are all certainly believed to be true by the utterer."

Upon these findings, and the assumption that what is unlawful under the act of June 15, 1917, is unmailable, is based the conclusion of law that the act "forbids any one from willfully causing insubordination, disloyalty, mutiny, or refusal of duty in the military and naval forces of the United States" and that "to arouse discontent and disaffection among the people with the prosecution of the war, and with the draft tends to promote a mutinous and insubordinate temper among the troops." But, "if one stops short of urging upon others that it is their duty or their interest to resist the law, one should not be held to have attempted to cause its violation."

Therefore, because no writing or picture, of those specifically objected to by the defendant on the hearing (without any reference to the rest of the magazine or its history or environment), "directly advocated resistance" to (especially) the Conscription Act, the order appealed from was granted. The foregoing only follows through the findings and conclusion on one subdivision of the act, but that is enough for present purposes.

IV. The Postmaster General had found as a fact (inter alia) that the "Masses" sought to promote a mutinous, disloyal, and insubordinate spirit among troops; I think the District Court did not disagree as to that. But it was held that, because the plaintiff stopped short of urging resistance, the law was not violated. The questions presented, or some of them, are: (1) Is such view of the law correct? (2) Is it so clearly correct that the courts should interfere? For it is admitted that the Postmaster General held that such indirect incitement

to disloyalty, etc., as the court found in the magazine, did amount to resisting and therefore violating the law.

This second query must be first answered, for courts do not interfere, except in the clearest cases, with the action of one of the great executive departments in interpreting law affecting that department. Smith v. Hitchcock, 226 U. S. 58, 33 Sup. Ct. 6, 57 L. Ed. 119. In my opinion it is very difficult to answer this question in the affirmative.

As to the first query, it is at least arguable whether there can be any more direct incitement to action than to hold up to admiration those who do act. Oratio obliqua has always been preferred by rhetoricians to oratio recta; the Beatitudes have for some centuries been considered highly hortatory, though they do not contain the injunction "Go thou and do likewise." At all events, it is a point plainly suitable for the attention of an appellate court.

Behind and beyond these questions of statutory construction, and of how far discretionary action (and all injunctions pendente lite are discretionary) by the judicial department may interfere with executive discretion, lies a fundamental inquiry as to the nature of the postal service. In respect of the mails the United States is certainly not a common carrier; it is pursuing a high governmental duty (Searight v. Stokes, 3 How. 169, 11 L. Ed. 537; cf. Re Debs, 158 U. S. 583, 15 Sup. Ct. 900, 39 L. Ed. 1092), and it is at least arguable whether any constitutional government can be judicially compelled to assist in the dissemination and distribution of something which proclaims itself "revolutionary," which exists, not to reform, but to destroy, the rule of any party, clique, or faction that could give even lip service to the Constitution of the United States.

V. (1) So far as the parties are concerned, the present and actual situation is such that any wrong suffered by plaintiff can be wholly redressed by damages, apparently (only) measured by the expense of the different transportation arrangements now confessedly perfected.

(2) So far as the public interest is concerned, enough has already been said, except to point out that the Circuit Court of Appeals for this circuit has not closed its term; it can be convened at any time on the summons of the senior judge.

The existing stay will be continued, on terms specifically set forth in the order filed herewith.