**McCORMICK-MATHERS PUB. CO. v. HANNEGAN.**

No. 9235.

United States Court of Appeals District of Columbia.

Argued Jan. 7, 1947.

Decided March 31, 1947.

Mr. Thomas E. Deacy, of Kansas City, Mo., of the Bar of the State of Missouri, pro hac vice, by special leave of court, with whom Mr. Albert Rea Williams, of Washington, D. C., was on the brief, for appellant.

Mr. Sidney S. Sachs, Asst. U. S. Atty., of Washington, D. C., with whom Messrs. George Morris Fay, U. S. Atty., Daniel B. Maher, Asst. U. S. Atty., and Paul Meininger, Atty., Office of the Solicitor, Post Office Department, all of Washington, D. C., were on the brief, for appellee.

Messrs. Edward M. Curran, U. S. Atty., of Washington, D. C., at the time the record was filed, and John W. Fihelly, Asst. U. S. Atty., of Washington, D. C., also entered appearances for appellee.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

GRONER, C. J.

Appellant is engaged in the general publication, sale and distribution of school textbooks, commonly referred to as "work books." In August, 1945, it brought its amended injunctive petition in the District Court, alleging that the Postmaster General had wrongfully and in violation of law denied it the right to have its publications carried in the mails at the book postage rate fixed by the Act of June 30, 1942.[1] There was a hearing after which the District Court denied the prayer of the petition and dismissed the bill. On this appeal the vital question—as all agree—is whether appellant's publications are entitled to book rates established by the terms of the Act.

The Postmaster General's contention is that, lacking statutory definition, he is authorized to define the term "book" and since, as he asserts, appellant's publications are not "permanently" bound, they are not "books" and accordingly not entitled to the low rate prescribed.

The following is a sufficient narrative of the facts: Appellant's publications cover practically the field of primary education—under at least 55 different titles.

[1] 56 Stat. 462, Act June 30, 1942, 39 U.S.C.A. § 293a—1.

All consist wholly of reading matter and questions to students designed for and used in school-teaching, but in every case containing pages having blank spaces for students' notations. The first six of appellant's exhibits were taken by agreement as representative of the size, character and content of its publications generally.

No. 1 is entitled: "New Plain Way English Exercises Self-Correcting Laboratory Plan Book III," and contains 110 pages of reading matter and school exercises. All of the pages are perforated at the inside margin and bear at the top of each page a line with a blank space for the insertion of the name of the user and occasional blank spaces for students' notations. Obviously, the purpose of perforation is to make it optional with the teacher whether the page shall or shall not be detached on the completion of the lesson.

No. 2 is entitled: "Individual Corrective Exercises for Elementary English, Book 5," and contains 96 pages of reading matter, much like No. 1.

No. 3 is entitled: "Essentials in English-Laboratory Method, Book II (New Edition)," and consists of 144 pages of material similar to Nos. 1 and 2. Approximately 36 of the pages are perforated and there is a statement in the forepart of the book that the purpose of this is to facilitate class room work of the student and decrease the amount of home work.

The books are approximately 10½ inches by 8 inches in size and are bound with heavy paper, much like a lawyer's brief. The other three exhibits, in the interest of space, need not be mentioned in the same detail, as they are essentailly similar to the first three.

Stated chronologically, the statutes and regulations which must be considered begin with a proclamation by the President, dated October, 1938, which recites that a survey in the interest of the promotion of cultural growth and education required that there should be put into effect lower postage rates on "* * * books consisting wholly of reading matter and containing no advertising matter. * * *" [2]

At the time of the proclamation and thereafter the postal regulations on the general subject defined a book as a cloth or paper bound volume having 24 or more pages, of which at least 22 were printed, but excluded those containing ruled or blank pages intended for record or memoranda purposes. [3] Under the latter part of the regulation the Department ruled that books *containing blank pages for students' notations* were not entitled to the benefit of the lower rates. And so the matter continued until in 1942 Congress, urged thereto by school book publishers, and after extensive hearings, at which appellant was represented and its textbooks submitted and examined by the Committee, amended the applicable statute as follows: "The postage rate on books consisting wholly of reading matter or reading matter with incidental blank spaces for students' notations * * * when mailed under such regulations as the Postmaster General may prescribe, shall be 3 cents per pound or fraction thereof * * *."

Whereupon the Postmaster General amended the existing regulation to read: "A book, within the contemplation of paragraph 5, shall be a cloth- or paper-bound volume having twenty-four or more pages of which at least twenty-two are printed, and *with the exception of textbooks containing incidental spaces for students' notations,* shall not contain ruled or blank pages intended for records or memoranda purposes." (Italics added.) [4] And thereafter until March 30, 1944, appellant mailed its textbooks, or school work books, at the rate fixed by the Act, but on the latter date the Postmaster General, without notice or hearing, placed a ban upon appellant's publications on the ground that they were not books within the meaning of the Act as amended in 1942, for the reason that having perforated pages capable of removal in the daily class work of the student, they were not *permanent* publications. In short, that though the publications were

---

[2] Proclamation Oct. 31, 1938, No. 2303,
[3] Code Fed.Regs. (Cum.Supp.1943).
[3] Postal Laws & Regulations (1940) § 572.

[4] Postal Laws & Regulations, § 572, amended July 1, 1942.

student work books and though the bindings and contents complied in all respects with the Act and regulations, they were not entitled to book rates for the reason that the perforation of some or all of the pages indicated the purpose of ultimate destruction of the book in its use.⁶ Appellant complains of this ruling upon the ground that the Act itself makes no requirement of permanence, but on the contrary clearly shows that it was the express purpose and intent of Congress in the amendment of the Act that all school textbooks, sometimes known as "work books," with or without "blank spaces for students' notations," should have the benefit of the book rate.

This brings us then to a consideration of the question whether the feature of "permanency," on which the Department insists, must be or can be sustained under the textual language of the Act.

The 1942 Act, as we have indicated, was the result of extended hearings by the Post Office Committee in which school book publishers participated and in which the right and privilege of school books, as an educational medium, to be carried in the mails at the low rate was urged as the main objective of the hearings. The House Committee thereafter made a report recommending amendments to existing law whereby religious and educational books consisting wholly of reading matter should have preference in mailing rates;⁵ and the bill to that effect passed the House. Action in the Senate, along somewhat different lines, necessitated a conference as a result of which the House conferees agreed to accept the language of the Senate bill, amended however by the insertion of the words: "or reading matter with incidental blank spaces for students' notations." As to this the House Committee said: "This amendment was insisted upon by the House conferees in order that educational textbooks that have come into common use during the last two decades, commonly referred to as workbooks, might enjoy the same postage rate privileges as other books."⁶ And so the present Act came into existence. Therefore, when it is re-

membered that the Post Office authorities at the time were insisting that school textbooks containing "blank spaces intended for records and memoranda purposes" should not be considered entitled to the reduced rate, and when it is apparent, as it is, that Congress in express language rejected this contention, it is perfectly obvious to any one considering the subject that the Department's position in this respect was overruled. And when it is admitted, as it is, that at the Congressional hearings there was brought to the attention of the Committee the fact that many such textbooks contained perforated pages which might be removed in the ordinary course of the teaching exercises, we think it follows logically that textbooks of the make and quality of those of appellant were considered and purposely included by Congress in the list of publications entitled to the book rate. The present position of the Department, namely, that the publications are not books because through the removal of pages in the daily exercises of the child in the school work, the books may be partially or gradually diminished until nothing is left and thereby cease to be "permanent," seems to us to be clearly an afterthought, to be wholly opposed to the clear intent of Congress and to set up an additional requirement beyond anything imposed by the Act. Certainly, nothing is shown in the Congressional hearings to justify or portend the Department's present position, and equally it is clear, as we have shown, that the House and Senate Committees were advised that some of the work books before them had perforated pages. In such circumstances to hold that the precise language of the Act should not limit the Department's power would be an unjustifiable invasion of the Congressional purpose. Almost 50 years ago, in a case more or less involving this question, we said:

"It is very clear that the Congress of the United States has not committed to the Postmaster-General, or to anyone else, the matter of determining what should be carried in the mails as second-class matter, and

---

⁵ H.R.Rep.No.2239, 77th Cong., 2d Sess. (1942).

⁶ H.R.Rep.No.2261, 77th Cong., 2d Sess. (1942) 3.

what as matter of the third class. It has reserved that power exclusively to itself. * * * It has itself made the classification; and it is not competent for the Postmaster-General to add anything to the statute or to take anything from it. It may be that the classification has not been made with all the definiteness that is desirable. * * * yet it is not the province of the Postmaster-General to remedy the evil, if evil there is, by a postal regulation, or by unwarranted interpretation of the law." [7]

 That appellant's publications in their original condition are books, as that word is commonly used, there can be no doubt. That they become less so because of the perforation of some or all of the pages, we think, is a contention wholly without substance and is negatived by the language of the Supreme Court and this court in cases in which the general subject is discussed. See, Smith v. Hitchcock, 1912, 226 U.S. 53, 59, 33 S.Ct. 6, 57 L.Ed. 119; Houghton v. Payne, 1904, 194 U.S. 88, 97, 24 S.Ct. 590, 48 L.Ed. 888; Hitchcock v. Smith, 1910, 34 App.D.C. 521; and Payne v. Houghton, 1903, 22 App.D.C. 234. Equally, there can be no doubt that in using the language it did, Congress is presumed to have intended the well settled meaning of the words used. Likewise, it is certainly true that even under the language used in the new regulations, the publications in question are books, and there is nothing to be found in that language to show that "permanency" is an essential feature. On the contrary, the only restriction placed upon the word "book" in the 1942 Act and the corresponding regulation is that it must consist wholly of reading matter, or reading matter with incidental blank spaces for students' notations. The books in question fit into this description. Each is complete in itself with a single subject and all are of an appreciable size, and to this may be added that all are "educational textbooks commonly referred to as work books," in whose behalf Congress, as is shown by the Committee Report, enacted the amended statute. Enough has been said, we think, to show that the statute we are considering definitely indicates the intention of Congress that school books of the nature and character of those published by appellant should be accepted and carried in the mails at the book rate set in the statute, whether or not the pages are perforated. And if we are correct in this respect, it follows that action of the Department in interposing an additional factor not authorized by the terms of the Act is without right or justification and must be controlled.

We are accordingly of opinion that the decision of the District Court is wrong and must be reversed and the proceeding remanded to the District Court for action in accordance with this opinion.

Reversed

[7] Payne v. United States ex rel. National R. R. Pub. Co., 1902, 20 App.D.C. 581, 597–598; appeal to Supreme Court dismissed on motion of Solicitor-General, 1904, 192 U.S. 602, 24 S.Ct. 849, 48 L. Ed. 583.