No. 40,007

THE STATE OF KANSAS, *Appellee*, v. W. T. BEAN, *Appellant*.

(295 P. 2d 600)

374

*Clair D. Hyter* and *Elmer Goering,* both of Hutchinson, were on the briefs for the appellant.

*Granville M. Bush,* County Attorney, argued the cause, and *Paul E. Wilson,* Assistant Attorney General, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: The sole question presented is whether remarks and conduct of the trial court in the course of a criminal prosecution constituted prejudicial error, thus entitling defendant to a new trial.

For reasons which will hereinafter appear we feel compelled to hold that the question must be answered in the affirmative.

The defendant was charged with two counts, one being grand larceny and the other with cheating and defrauding by means of false pretenses. The charge of grand larceny arose out of the alleged theft by defendant of 65 sacks of cement belonging to one Mrs. Patterson, an elderly lady, and the fraud count arose out of defendant's having obtained a deed to certain property owned by Mrs. Patterson, the deed being made to defendant's wife, defendant thereby obtaining a beneficial interest and use in the property.

Defendant had been employed by Mrs. Patterson to move a house belonging to her and to place it on a foundation to be built by him. In addition, she had employed him to build a small house in Lyons. In view of the only question presented on this appeal it is unnecessary to detail the evidence with respect to defendant's guilt, and it is enough to say that it was sufficient to support the jury's verdict of guilty on both counts.

While defendant was testifying in his own behalf he admitted, under cross-examination, that Mrs. Patterson had executed the deed to his wife which was the basis of the second count of the information. Counsel, in an apparent effort to establish a direct financial benefit accruing to defendant, sought to bring out the fact that he and his wife later deeded the property to one of his attorneys and that he used a part of the consideration received therefor to pay certain bills. During his cross-examination he was confronted with a copy of this purported deed in which he and his wife were grant-

ors.  Their names as grantors were typed in and he was not shown the original deed.  At this point, in order to show precisely what transpired, it will be necessary to quote a portion of the record.  It is as follows:

"Q.  Did you sign the deed?  A.  Well, it is like this, if we got the money to do what we wanted to do with, and the papers were fixed up later on, and I am busy working all the time, I let her transact the business part, and I do the work.

"Q.  When did you sign this deed to Mr. Hyter?  A.  I don't think I ever signed any deed.

"Q.  You didn't?  A.  I don't recall if I did; in fact, I don't think I have ever had my hands on a deed.

"Q.  I hand you something here, and you look that over, if you will, please? A.  I still don't see where I signed it.

"Q.  What does this say?  What does that purport to be, Mr. Bean?  Does that purport to be a copy of a deed?  A.  It says a true copy, but I still don't see where I signed it.  That is not my signature.

"Q.  No, that is not your signature; it is typed in.  You say you never signed the deed?  A.  I don't say I didn't, I say I don't recall signing it.  I don't remember signing it.

"Q.  What did you do with this—  A.  Lots of times my wife will have things, hand me a piece of paper and say, 'Here, you have got to sign it,' and I don't remember it; I just sign it because she says it is all right.

"Q.  What did you use this money for you borrowed from Mr. Hyter? A.  Well, seemed to me like I cleared some indebtedness with it.

"Q.  Cleared some of your indebtedness, is that right?  A.  Yes.

"Q.  How much did you borrow from Mr. Hyter?  A.  It was better than $1000.00.

"Q.  Better than $1000?  A.  Yes.

"Q.  You gave him a deed to the property?  A.  I never had no deed to give him, my wife probably gave him a deed.

"Q.  And you don't know whether or not you signed the deed, is that right? A.  That is right.

"Q.  But the money obtained through this deed, you used to take care of some indebtedness, is that correct?  A.  That's all I could figure it went with, that is generally what I do with my money, is pay my bills.

"Q.  How much more than $1000 did you borrow from Mr. Hyter?  A.  I wouldn't know, unless I had something to go by, how much I—

"Q.  You know how much you borrowed on this property, don't you, Mr. Bean?  A.  It was something between one thousand and $2000; I couldn't state exactly for I don't know.

"Q.  Instead of giving Mr. Hyter a mortgage, you gave him a deed to the property, is that right?  A.  I told you I didn't have nothing to do with it, giving it to him.

"Q.  You talked it over with your wife, didn't you?  A.  We agreed to give him the holt on something we had for the money.

"Q.  You have him a hold on your property?  A.  A mortgage or something,

and I suppose Mr. Hyter figured it would be better that way than it would be the other way. I don't know what they decided on. I leave at seven o'clock in the morning, and a lot of times I don't even come in until four o'clock on Saturday evening.

"By the Court:

"Q. They didn't do that in your absence, did they? A. Not unbeknownst to me, Judge.

"Q. You signed the deed? A. I don't recall it, I don't recollect signing it, I could have signed it, but I don't recollect signing it, Judge. That has been quite a little bit ago. I don't recollect that.

"Q. You are under oath, Mr. Bean, and you know whether or not you signed a deed to that property with your wife to this gentleman mentioned; is that right? Answer my question, you know whether or not you did, don't you? A. No, I don't.

"The Court: Mr. Bailiff, you will take this gentleman over to jail until his memory improves—this gentleman here. You will take him over to the sheriff. Mr. Sheriff, you will take this gentleman over to the jail until· his memory improves.

"A. Judge, if I could see my signature, I would know it, but in that way, I would have knowledge of it, but I am trying to tell you the truth, Judge. I don't know, I don't recollect whether I did or not.

"The Court: Well, I am trying to help you tell the truth.

"A. Well, honest to God, I am telling it, cross my heart to die.

"The Court: That is all I am interested in this case is just—

"A. I am very sorry if you have misjudged me.

"The Court: I am not misjudging you.

"A. Could I see my signature.

"The Court: Yes, you can see your signature.

"A. Well, let me see—

"The Court: Who is the party that is supposed to have the deed?

"A. Well—

"The Court: Who is he?

"A. Mr. Hyter is sitting there.

"The Court: Does he have the deed?

"A. Yes he has the deed, I am pretty sure he has it.

"The Court: How do you know he has a deed, if you don't know whether you signed one or not?

"A. Because my wife, I think told me he had a deed. Judge, I am just a poor working boy, I don't have education enough to take care of figures like that, and I don't recall.

"The Court: I am not questioning you. I realize that you are a working man, and that you probably put in long hours, but you are under oath.

"A. I realize that, Judge.

"The Court: And you are going to testify, and if the court has anything to do about it, you are going to testify to the truth, the same as any other witness.

"A. I intend to, Judge.

"The Court: I am going to give you and your attorneys and your wife

five minutes in that jury room, and then you are coming back out and getting back on the stand; and you are coming back out and getting back on the stand; and you will wait, Mr. Sheriff.

"A. Thank You, Judge.

"Mr. Hodgson: Comes now the defendant, and moves for a mistrial for the reason that the defendant's case has been prejudiced beyond hope of repair by the comment of the court relative to the veracity of the defendant, when in fact the defendant did not have his signature or any instrument containing the signature before him for identification.

"The Court: That is your motion?

"Mr. Hodgson: Yes.

"The Court: It is overruled. If you want to take that five minutes to meet with your client in that room, that is your privilege; if you don't, we will go on from there."

The defendant retired to the jury room with his wife and counsel and shortly thereafter, upon resuming the witness stand for further cross-examination by the state, admitted that he did recall signing the deed in question and that he had used the money received therefor to pay debts.

Defendant was found guilty on both counts, and following the overruling of his motion for a new trial, one ground of which was alleged improper and prejudicial remarks by the court regarding defendant in the presence of the jury, has appealed.

The specifications of error are that the court erred in denying his motion for a mistrial and his motion for a new trial.

On numerous occasions this court has been called upon to decide questions dealing with alleged prejudicial conduct on the part of a trial judge as furnishing sufficient ground for a new trial. The question has arisen in many different situations. In some instances the alleged prejudicial remarks were made to counsel in the presence of the jury, and in others the complaints concern comments on the evidence in the jury's presence. Instances also are cited in which the trial judge obviously was attempting to clarify the evidence or to pursue a certain line of testimony which he deemed necessary in order for the jury to have a full and complete understanding of the facts. In some cases the alleged prejudicial remarks were addressed to the defendant himself while testifying, while in others they were addressed to other witnesses. No good purpose would be served by reviewing in detail the many cases dealing with the subject for it seems clear that no hard and fast rule can be laid down due to the many and varied circumstances in which the question arises. In other words, it is quite apparent that

each case, not only in our own jurisdiction but in others, has been decided largely on the facts and circumstances of the particular case. We cite but a few of our decisions on the subject: *The State v. Keehn,* 85 Kan. 765, 118 Pac. 851; *The State v. Marshall,* 95 Kan. 628, 148 Pac. 675; *State v. Miller,* 126 Kan. 578, 270 Pac. 610; *State v. Marek,* 129 Kan. 830, 284 Pac. 424; *State v. Ridge,* 141 Kan. 60, 40 P. 2d 424, and *State v. Winchester,* 166 Kan. 512, 203 P. 2d 229. See also 53 Am. Jur., Trial, §§ 75, 76, pp. 74, 75, and the annotations at 65 A. L. R. 1270, and 84 A. L. R. 1172.

From these and other authorities it is firmly established that while the position of a trial judge certainly is not that of a mere "umpire" or "moderator of a town meeting," and that under proper circumstances he may resort to appropriate means and steps so as to bring out the truth and all of the facts concerning the matter in issue, yet, in the event he deems it necessary to cross-examine a witness, and particularly the defendant, in order to prevent a miscarriage of justice, he must exercise great care to prevent giving the jury the impression that he is biased against the defendant or that he personally disbelieves the witness or defendant, and he must not forget the function of a judge and assume that of an advocate. The jury are the exclusive judges of the credibility of witnesses, and the trial judge should refrain from remarks which will affect their credibility in the minds of the jury.

Briefly, the situation presented here really amounts to this:

Defendant, on cross-examination, already had admitted that his wife had received a deed to the property in question from Mrs. Patterson. While being examined further concerning whether he and his wife in turn had deeded the property to another party, he was confronted with a copy of the purported deed in which his signature had been typed in as one of the grantors. The record does not indicate why the original deed bearing his signature was not introduced. Be that as it may, the trial judge then took charge, as shown by the proceedings above quoted. All of this was said and done in the presence of the jury and we think could produce but one result, that is, to discredit defendant in the minds of the jury. In other words, putting it bluntly, we think the incident could result in but one impression in the minds of the jury, namely, that in the opinion of the trial judge the defendant was a liar! Notwithstanding the fact that some of defendant's answers may be said to have been "evasive," he at no time had been confronted with the

original deed and asked to identify his signature. That should have been done, but instead the trial judge resorted to the measures shown, all in the presence of the jury. Inasmuch as the court felt called upon to take drastic measures it would have been much better if a recess had been taken and the proceedings had in the jury's absence.

It is argued by the state that as the evidence of defendant's guilt was so clear, direct and overwhelming he would have been found guilty even though the incident had not occurred, and therefore the error, if any, should not be held to constitute prejudicial error. That is hardly the test. Perhaps, as contended, defendant would have been found guilty in any event even though the incident had not occurred, the fact remains that no matter how strong and overwhelming the evidence against a defendant may be, and no matter how guilty he may be, he still is entitled to a fair and impartial trial.

For the reasons stated we feel compelled to hold that defendant did not receive a fair and impartial trial, and the judgment is therefore reversed with directions to grant a new trial.

FATZER, J., not participating.