Preston McCROSSEN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7785.

United States Court of Appeals
Tenth Circuit.

Jan. 7, 1965.

Dale B. Dilts, Albuquerque, N. M., for appellant.

John Quinn, U. S. Atty. (Lewis O. Campbell, Asst. U. S. Atty., on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

McCrossen was charged by information with six counts of knowingly depositing in the United States mail certain items of nonmailable matter, in violation of 18 U.S.C.A. § 1718.[1] He was tried before a jury on all six counts and was convicted upon Counts 3, 5 and 6, from which judgment of conviction he appeals.

The alleged nonmailable matter consisted in each instance of an envelope upon the outside of which was written language that the Government claimed to be of a defamatory character. The envelope involved in Count 3 was postmarked on March 17, 1962, was addressed to Marcel Pick of Santa Fe, New Mexico, and the writing on it referred to the same Marcel Pick.[2] The envelope in Count 5 was postmarked on December 20, 1961, and it was addressed to one Kenneth Evans of Santa Fe. The alleged defamatory language is set forth in the mar-

---

1. The statute defines nonmailable matter, insofar as pertinent here, in the following language:

"All matter otherwise mailable by law, upon the envelope * * * of which * * * is written * * * any * * * language of libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, is nonmailable matter * * *."

2. This writing reads as follows:
"I CALL FOR A JURY TRIAL BEFORE 12 LOYAL AMERICANS AND A LOYAL AMERICAN JUDGE OF, MARCEL PICK

FOR DEFAMATION OF LOYAL AMERICANS
FOR SUPPRESSION AND DISTORTION OF FACTS
FOR INCITATION TO RIOT AND VIOLENCE
FOR ACTION UNBECOMING TO A LOYAL CITIZEN
FOR AIDING AND ABETTING TREASON
FOR USING PUBLIC COLLECTIONS FOR SUBVERSION
FOR ORGANIZING REBELLION AGAINST AMERICA
FOR BIGOTRY AND RACE HATRED
FOR INSOLENCE AGAINST IMPUDENCE
LET THIS TRIAL BE IN A FREE
AND OPEN COURT—AMERICAN STYLE"

gin.[3] In Count 6, the envelope was mailed on March 13, 1960, it was addressed to one S. L. Franklin of Santa Fe and the writing referred to the then President, Dwight D. Eisenhower.[4]

The first point urged by appellant for a reversal is that the trial court committed prejudicial error by refusing to invoke the rule excluding witnesses from the courtroom when not testifying. The request to exclude witnesses was made by appellant's counsel at the beginning of the trial and after the jury had been empaneled and sworn.[5] In Johnston v. United States, 10 Cir., 260 F.2d 345, 347, cert. denied, 360 U.S. 935, 80 S.Ct. 1454, 4 L.Ed.2d 1547, Judge Pickett, speaking for this court, stated the applicable rule of law in the following language: " * * * The question of whether witnesses should be excluded from the court room while not testifying is addressed to the sound discretion of the trial court and is subject to review only upon a showing of abuse of that discretion or manifest injustice, * *."

There is no such showing in this case. The record discloses that the Government used six witnesses in making its case. Three of the witnesses were addressees on the envelopes in question; one was an assistant postmaster in Santa Fe, who identified the Santa Fe postmark on each of the envelopes; another witness was a handwriting consultant for the postal inspectors; and the sixth was a postal inspector. A careful reading of the testimony of these witnesses reveals nothing which might indicate that the testimony of any one of them was influenced in any way by their presence in the courtroom during the taking of evidence. In other words, there is a complete absence of any showing of prejudice to appellant.

Appellant's next point is that the conviction on the three counts of the information should be reversed because section 1718 must be construed in the light of the law of libel and under that law the writings or statements on the outside of the envelopes are privileged. His

3.
  "ACTS AGAINST LOYAL
  CITIZENS IS A VIOLATION
  OF SECTION #51 TITLE 18
  OF THE U.S. CRIMINAL CODE

  "A LOCAL LAUNDRY-MAN
  AND THE RABBI COMMITTED
  SUCH A CRIMINAL ACT AGAINST
  ME—VIA TELEPHONE."

———◆———

4. It is as follows:
  "I CALL ON ALL LOYAL AMERICANS
  TO HELP IN THE ARREST OF
      PRESIDENT EISENHOWER FOR
  aiding and abetting
      MURDERERS
      THIEVES
      LIARS
  AND FOR
      MALFEASANCE—AND
      CONSORTING WITH
      TRAITORS—AND FOR
      SUBVERSION"

———◆———

5. At this point the court inquired of counsel: "Any particular reason why it [the rule] should be invoked in this cause?" Counsel replied: "No particular reason, any more than any other."

argument is that the persons referred to in the writings, i. e., Marcel Pick and former President Eisenhower, were at the time, and still are, public figures and therefore his statements concerning them were privileged under the rule announced in Garrison v. Louisiana, U.S., 85 S.Ct. 209, and New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

Under Art. 1, § 8, cl. 7 of the Constitution, Congress has the power to " * * * establish Post Offices and post Roads." It has long been the law that this power embraces the regulation of the entire postal system and includes, within constitutional limitations, the right to determine what may be carried in the mails and what may be excluded. Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092, Ex parte Rapier, 143 U.S. 110, 12 S.Ct. 374, 36 L.Ed. 93; In re Jackson, 96 U.S. 727, 24 L.Ed. 877. Congress has exercised that power by providing in section 1718 that certain types of material shall be considered to be nonmailable matter. Therefore, the prohibitions contained in that statute must be construed in the light of the regulatory power of Congress rather than in the light of any First Amendment limitation. In other words, in our consideration of this case, we must keep in mind that the gist of an offense under section 1718 is not the making and uttering of the prohibited writing. It is the depositing in the United States mail of an envelope containing on the outside thereof the prohibited writing. The statute is not, by its express terms, limited solely to "libelous" statements. It encompasses also statements which are "scurrilous", "defamatory" or calculated and obviously intended to reflect injuri-

ously upon the character or conduct of another. It may be conceded, therefore, that statements claimed to be libelous must be measured by the law of libel and it has been so held. American Civil Liberties Union v. Kiely, 2 Cir., 40 F.2d 451. But, that does not mean that the other types of prohibited statements must be construed in the light of the law of libel. To the contrary, we think that writings on envelopes may be prohibited by Congress under its regulatory power even though they are not strictly libelous.

Congress, in enacting the statute, saw fit to prohibit the mailing of several different types of matter. By using the disjunctive "or", it clearly intended to prohibit the mailing of any one of those types. Its purpose in so doing was to prevent the postal facilities from being used as a means for the publication of libelous, defamatory or scurrilous matter tending to injure the character or conduct of another. 41 Am.Jur., Post Office, § 122, pp. 779–780; 72 C.J.S., Post Office § 47, pp. 338–339; Annotation, 112 A.L. R. 1145. If Congress had intended to prohibit only libelous matter, it could have done so by merely defining nonmailable matter in terms of libelous statements. But it went further and included other types of statements in the definition. Whatever may be said about the libelous nature of the writings in question and any claim of privilege in connection therewith, it is clear that a jury could reasonably conclude that they were defamatory or calculated and intended to reflect injuriously upon the character and conduct of the persons referred to, Pick and President Eisenhower.[6] The jury in this case apparently determined that the writings were

6. The court instructed the jury as follows: "In addition to finding that the defendant knowingly deposited the envelope for mailing, you must find that the language on the envelope is calculated—is defamatory, and calculated by the terms and manner of display, and obviously intended to reflect injuriously upon the character or conduct of another.

"For the purpose of the charges under consideration, you are instructed that 'defamatory words' are words which, in their ordinary meaning, are calculated to bring some specific person or specific persons into disrepute or disgrace, or tend to hold a specific person or specific persons up to contempt, hatred, scorn or ridicule, or tend to reflect adversely upon his or their reputation, or which accuse a person or persons of a crime."

defamatory or calculated to reflect injuriously upon the character and conduct of the persons named and we are not at liberty to set aside that determination.

Appellant's final point is that the writings upon which Counts 3, 5 and 6 are based were not defamatory statements directed at any specific person but were directed to social, political and religious ideas. The statute, being of a penal character, should be strictly construed and should not, by construction, be extended beyond its terms. McKnight v. United States, 9 Cir., 78 F.2d 931. And, as was said in American Civil Liberties Union v. Kiely, supra, 40 F.2d at 453: "In the present case we may consider only the words on the envelope. We cannot speculate as to what person, if any, the words are aimed at or determine the fact aliunde. * * *" The court in that case also said that the words on the envelope "* * * to be defamatory within the meaning of the statute, must charge some identifiable person with something. * * *" (40 F.2d at 453.) Applying these principles to the writings in question, we must conclude that the writing in Count 5 does not meet the test. There is no mention made of any specific person in the language used and, as we have seen, the person or persons may not be determined from other sources. The same is not true, however, of Counts 3 and 6. The writing in Count 3 refers specifically to Marcel Pick and clearly charges him with the most heinous of crimes, treason and rebellion against the United States. The writing in Count 6 specifically refers to President Eisenhower and, of course, is defamatory. Nor can it be concluded that the writings in Counts 3 and 6 refer to social, political or religious ideas. They obviously refer to the persons named.

The judgment of conviction is reversed as to Count 5 and affirmed as to Counts 3 and 6.