No. 45,565

State of Kansas, *Appellee*, v. Perry F. Guffey, *Appellant*.

(468 P. 2d 254)

Opinion filed April 11, 1970.

*Orval L. Fisher*, of Wichita, argued the cause and was on the briefs for the appellant.

*James Z. Hernandez*, Deputy County Attorney, argued the cause, and *Kent Frizzell*, Attorney General, *Keith Sanborn*, County Attorney, and *Russell E. Grant*, Deputy County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: Defendant, Perry F. Guffey, appeals from a conviction of robbery in the first degree (K. S. A. 21-527). The questions presented concern various rulings and the conduct of the trial court during the course of the trial.

Defendant was charged with the robbery of two Wichita grocery stores, the Red Bud Store No. 9, on January 28, 1968, and the Dillon Store on February 7, 1968, and with two counts of possession of a firearm after previous conviction of a felony. Defendant was convicted of the Dillon robbery and acquitted of the other three charges.

The evidence disclosed that about 7 p. m. on January 28, 1968, two persons approached the courtesy booth of the Red Bud Store

where Gary Willcutt, a store employee, was at work. Willcutt asked if he could be of service and the party, later identified as defendant, revealed a small pistol in his hand and stated to Willcutt "This is a stick-up. Turn around." Thereafter, defendant had Willcutt open the cash register and defendant's companion entered the courtesy booth, took the money out of the cash register, put it in a paper sack, and defendant and his companion left the store. Willcutt called the police and investigation of the robbery was immediately commenced.

Around 8:30 p. m. on February 7, 1968, a robbery occurred at the Dillon Store which was perpetrated in much the same manner as in the case of the Red Bud Store robbery. The defendant and his companion approached the courtesy booth where Donald Loibl, a store employee, was on duty. The Dillon courtesy booth adjoins the express lane check out. Sidney Fox and Kathy Monte, store employees, were behind the counter on the express lane when defendant and his companion approached the employees and advised them "This is a stick-up" or "This is a hold-up" and ordered them to "Turn Around." Fox was then ordered to open the two cash registers adjacent to the express lane; and defendant's companion took the money from both registers, put it in a paper sack which he had in his hand, and the two left the store after directing Fox, Monte and Loibl to face the opposite direction.

During the course of the Dillon robbery Rose Tucker (now Rose Knola), a customer and also an acquaintance of Kathy Monte, approached the cashier's stand and inquired about some nylon hose which she intended to purchase. Mrs. Knola observed that a robbery was in progress, left the store by the way of the front door, and called the police. After taking the money from the cash registers, defendant and his companion left the store.

The day following the Dillon robbery, officers of the Police Department showed the store employees and Mrs. Knola approximately one hundred photographs. Each witness went through the photographs at separate times and places, and each selected the same photograph as representing the defendant, who was described as the taller of the two robbers and the one who held the pistol and gave all the commands.

The following day a line-up was held in the Sedgwick County Sheriff's office. The line-up was staged in two sections consisting of six persons in each of two "show-up" lines. In the second show-up

line defendant was identified as the man with the pistol by the four witnesses to the Dillon robbery and also by Mr. Willcutt of the Red Bud Store.

Defendant makes no complaint concerning the arrangements for the line-up, but each witness was subjected to exhaustive cross-examination concerning identification.

Defendant was arrested early the morning of February 9 by Sergeant Charles E. Stewart and Detective William Hannon, of the Wichita Police Department. After his arrest, defendant was advised by Stewart as to his rights, including his right to call a lawyer. Stewart testified that defendant answered that he understood those things. Defendant was taken to the station interviewing room where he was again advised concerning his rights by Officer William Hannon. Defendant told Stewart and William Hannon that he would like to talk to them about the charges, but he wanted to talk to Major Floyd Hannon first. Defendant was then taken to Major Hannon's office where defendant when asked why he did it said "I needed the money." According to Sergeant Stewart's further testimony defendant said that he had thrown the gun into the river over by McLean Boulevard after the Dillon robbery; and that the gun was only a toy pistol.

During the course of the trial Stewart and William Hannon were examined out of the presence of the jury, as to the voluntariness of defendant's admissions; and the testimony of Stewart and Hannon in this regard was later received in evidence, about which defendant makes no complaint on appeal.

While the details are not furnished us, it appears from the record a full preliminary hearing was held at which defendant was represented by his retained counsel and the testimony of the state's witnesses was submitted.

The trial in district court extended over four days; and from the voluminous record on appeal, it is evident the case was thoroughly tried and the defendant afforded a vigorous defense by the zealous efforts of his competent and industrious counsel. As we have indicated, the trial ended in a conviction of the Dillon Store robbery and an acquittal of the other three counts.

Defendant's counsel makes six specifications of error. However, in his brief he extends his arguments to include an attack on the trial court's conduct of the trial at almost every stage. We shall

consider defendant's contentions as they relate to the chronological progress of the trial.

The first alleged impropriety concerns orientation by the trial court of the entire jury venire prior to the docket call of the case. Defendant suggests that since he requested a complete trial transcript and no record of the court's orientation remarks were included, then it must be assumed the orientation remarks were not recorded by the court reporter.

From our examination of the record we find no mention made of this matter until defendant's motion for a new trial, following completion of the trial. Defendant fails to demonstrate specifically how he was prejudiced, but merely asserts the remarks should have been made a part of the trial record. We are informed that it is the custom generally for judges of the Sedgwick District Court to give orientation remarks to the array of jurors prior to docket calls scheduled for the respective divisions of the court.

Recognizing the desirability of some form of orientation for a new jury panel, the committee in preparing Pattern Instructions For Kansas prescribed seven instructions which might be used in orientation (PIK 1.01 to 1.07, inclusive). Whether these instructions were followed by the court in this case is, of course, not shown. If the instructions were followed it should have been noted in the record; if the orientation remarks were given extemporaneously by the court it would have been the better practice to make a record. (*State v. Earsery*, 199 Kan. 208, 428 P. 2d 794.)

In any event, if defendant felt aggrieved his remedy was to challenge and move to quash the venire prior to trial; his failure to make any objection at this point precludes any objection after trial or on appeal. (*Advance-Rumley Thresher Co. v. Schawo*, 126 Kan. 563, 268 Pac. 738.)

Defendant next complains concerning rules of the trial court pertaining to *voir dire* examination.

The rules referred to deal with the scope of *voir dire* examination and the conduct and decorum required of counsel in conducting examination on *voir dire*. A time limitation of thirty minutes is established for each side.

In general the rules proscribe arguing the case, establishing rapport; questioning concerning theories of law, or what verdict might be returned and given consideration. Collective questioning

whenever possible is directed and counsel is warned against use of first names or familiarity.

We are unable to pinpoint any specific conflict with general rules of law (47 Am. Jur. 2d, Jury, § 195, p. 785) or with our Rules Nos. 117 and 119 (Supreme Court Rules Nos. 117 and 119, 201 Kan. xxxi), pertaining respectively to courtroom decorum and local rules of district courts.

We note the rules referred to are not included in the "Rules of Court for the District Court of Sedgwick County Kansas" on file with the Clerk of this Court. Our Rule No. 119 and K. S. A. 60-267 authorize, within specified limitations, the judge or judges to make rules for their respective judicial district. Neither the rule nor the statute contemplate nor authorize separate rules for each division in a multiple judge district. Lawyers and litigants should not be confronted with different rules of procedure and courtroom conduct when they go from one division to another in the same judicial district.

Defendant's complaint is a general assertion that the application of the rules in this case "prohibited a meaningful *voir dire* examination." He fails to point out any instance where his right to a peremptory challenge was forfeited by application of the rules. Nor did he request any extension of the thirty minute time limitation. Here again defendant's complaint, so far as we are able to ascertain, was not called to the trial court's attention until after the completion of the trial, when it was asserted by defendant in his motion for a new trial.

The extent of examination of jurors on *voir dire*, of necessity, rests largely in the discretion of the trial court (*State v. Maxwell*, 151 Kan. 951, 102 P. 2d 109), and unless an abuse of discretion is clearly shown this court will not interfere.

Basically, the purpose of *voir dire* examination is to enable parties to select jurors competent to judge and determine facts in issue without bias, prejudice or partiality. Since defendant fails to show how his rights to develop challenges for cause or to exercise peremptory challenges were infringed by application of the rules, we cannot say prejudicial error resulted.

Chronologically, the next alleged abuse of discretion was the trial court's denial of the request of defendant's attorney to make an opening statement immediately following that of the state and prior to the commencement of the taking of evidence. In this

instance defendant's complaint was timely made. In denying defendant's request the trial court apparently relied on what was said in *State v. Moffitt,* 188 Kan. 109, 360 P. 2d 886, concerning order of trial under the provisions of K. S. A. 62-1438. In *Moffitt,* as in the instant case, the trial court refused to allow defendant to make an opening statement immediately after the state's opening statement. We stated the point was not specified as error on appeal but further commented:

". . . After the state had offered its evidence in support of the prosecution, defendant was allowed to make an opening statement. This was proper procedure in a criminal trial. (G. S. 1949, 62-1438, *First, Second.*)" (p. 111)

If the comment of this court in *Moffitt* is understood to be a holding that the procedure approved therein is exclusively the only proper procedure, such interpretation is mistaken. The *First* and *Second* provisions of K. S. A. 62-1438, relative to this point, read:

"*First.* The prosecuting attorney must state the case, and offer the evidence in support of the prosecution.

"*Second.* The defendant or his counsel may then state his defense, and offer evidence in support thereof."

The permissive verb "may" is used with reference to defendant's opening statement. Therefore, we believe the more logical construction of the two sections together is that the order of trial in this respect is permissive rather than mandatory and within the discretion of the trial court.

Defendant argues that he was prejudiced by the ruling in that his defense was alibi and that he should have been entitled to so inform the jury before it heard the testimony of the state's witnesses. Defendant's counsel claims that it would have been of benefit to the jury to have heard defendant's opening statement prior to hearing the state's evidence.

The state, on the other hand, argues that it would be extremely prejudicial to the state to allow defendant to make an opening statement following the state's opening statement and then at the close of state's evidence refuse to put on any defense evidence and, thereby succeed, prejudicially to the state, in setting forth facts which defendant had no intention of proving.

Defendant did submit evidence in his side of the trial which thwarts the thrust of the state's argument. Even so, we believe the position stated by each of the parties demonstrates that the matter

is one best resolved in the discretion of the trial court. In the case at bar, it appears the ruling stemmed from a misinterpretation of what was said in *Moffitt*, rather than by use of discretion. Nevertheless, we decline to hold the failure to resolve, by the use of discretion, such an inconsequential procedural matter to so prejudice substantial rights as to necessitate a new trial. We believe such pinpointing falls within the category of technical errors and irregularities with respect to the scope of appellate review as set out in K. S. A. 60-2105.

Defendant next complains of the trial court's refusal to order separation or exclusion of witnesses. Defendant first moved to separate witnesses before the state's opening statement. No reasons in support of the motion were stated at that time. The motion was overruled; the state proceeded to make its opening statement and the state's first witness was called and testified. At this juncture defendant renewed his motion to separate the witnesses and stated to the court:

"These are two separate counts, your Honor. This case turns on identification and the witnesses shouldn't be able to strengthen at this time their opinions of identification as elicited by other witnesses."

The motion was again overruled. Defendant strenuously argues that this ruling amounts to reversible error.

The state argues the court's initial ruling refusing to exclude witnesses was proper because defendant's motion was not supported by reasons. The state contends the second ruling by the court was proper even though defendant stated his reasons, because the second motion was untimely, since in the interim the state had made its opening statement and the testimony of one witness had been taken.

In a few jurisdictions exclusion of proposed witnesses from the courtroom during the examination of other witnesses is a matter of right on proper application. The great majority of jurisdictions, however, follow the rule that exclusion or sequestration of witnesses is a matter not of right but of discretion on the part of the trial court. (53 Am. Jur., Trial, § 31, p. 46; 32 A. L. R. 2d, Anno. p. 358) Kansas follows the majority rule (Vols. 1-3 Hatcher's Kansas Digest [Rev. Ed. Perm. Supp.], Criminal Law, § 121, and Vols. 4-6, Trial, § 18; Vol. 9 [Part 1] West's Kansas Digest, Trial § 41.)

We know of no Kansas case and none is cited in which a judgment was reversed on the ground of abuse of discretion by a trial court in refusing to exclude witnesses from the courtroom. Con-

versely, it has also been held that ordering exclusion over a party's objection is not an abuse of discretion amounting to reversible error. (*Lennon v. State*, 193 Kan. 685, 396 P. 2d 290.)

We hasten to say, however, that on proper application, timely made, exclusion of witnesses is generally allowed and we believe it to be the better practice.

Putting aside the question whether proper application was timely made in the instant case, we shall consider the matter in the light of the record presented to ascertain whether injustice resulted.

The instant trial extended over a period of four days, and we are informed on oral argument of the strong probability that no identification witness for the state was present in the courtroom during the testimony of another identification witness of the state. Such circumstance, if it be a fact, is not established by the record. We have, therefore, closely examined the testimony of the state's witnesses to ascertain whether influencing of a subsequent witness by the testimony of a previous witness is shown.

A careful reading of the testimony of the state's witnesses relative to identification reveals nothing which affirmatively indicates that the testimony of any of them was influenced in any way by their presence in the courtroom, if such were the fact, during the taking of evidence.

In other words, there is a complete absence of any showing of prejudice to defendant in this regard. While the identification of each of the state's four witnesses was positive as to the facial recognition of the defendant; their testimony varied with respect to clothing and other features. Defendant's counsel not only fails to point out how the testimony of any witness was affected by that of another, he recognizes variances in testimony as to descriptive details brought out by his skillful cross-examination. In his brief he described variances in testimony thus:

"The identification witnesses described physical features of defendant as heavy set, with dark hair, their estimates of height ranging from a little over 5'10" to 6'3", weight from 188 to 230, and age from 25 to 33. None of the witnesses knew the color of the eyes of the robber, although one faced him at a distance of one foot. The only description of clothing worn by the robber conflicted in that witness Loibl described that the robber wore a dark blue sweat shirt, while witness Monte described that he wore a rust colored jacket with a full, white fur collar."

In *McCrossen v. United States*, 339 F. 2d 810 (10th Cir.), 11 A. L. R. 3d 1268, the Circuit Court of Appeals had before it the

refusal of the trial court on timely motion to exclude witnesses. In meeting the issue on appellate review it said:

". . . A careful reading of the testimony of these witnesses reveals nothing which might indicate that the testimony of any one of them was influenced in any way by their presence in the courtroom during the taking of evidence. In other words, there is a complete absence of any showing of prejudice to appellant." (p. 812)

Defendant next complains that his cross-examination of the state's witnesses was restricted to such an extent as to amount to reversible error. In meeting defendant's contention in this regard, the state felt it was necessary to prepare and file a counter abstract of more than 130 pages of verbatim testimony, for the most part consisting of cross-examination by defendant's counsel.

Before delving into defendant's contentions, we should first take note of pertinent rules governing cross-examination in this jurisdiction, and the scope of review by this court where error is claimed.

The law of this state is clearly stated, and has been repeated many times, that the extent to which cross-examination of a witness may be allowed is in the sound discretion of a trial court and, unless prejudice or abuse of discretion is shown, there will be no reversal. (*State v. Greenwood,* 197 Kan. 676, 421 P. 2d 24; *State v. Stewart,* 179 Kan. 445, 296 P. 2d 1071; *State v. Rowland,* 172 Kan. 224, 239 P. 2d 949, 30 A. L. R. 2d 455)

In discussing the function of this court in reviewing matters of discretion in *State v. Wolfe,* 194 Kan. 697, 401 P. 2d 917, we said:

". . . This discretion is an incident to the mode and manner of trial, and in the absence of flagrant abuse, should not be disturbed on appeal." (p. 700.)

Furthermore, it is well-established that the burden of showing prejudicial error is on an appellant and he must make alleged error affirmatively appear before a new trial is granted. (*State v. Omo,* 199 Kan. 167, 428 P. 2d 768; and *State v. Davis,* 199 Kan. 33, 427 P. 2d 606.) Error is never presumed but must be established and if susceptible of a reasonable interpretation to the contrary the record of the proceedings will not be interpreted to show error. (*State v. Hess,* 178 Kan. 452, 289 P. 2d 759.)

Turning now to defendant's contentions: He first complains about interruption of his cross-examination of Gary Willcutt. Willcutt was an employee of the Red Bud Store. His testimony was

offered to identify defendant as a participant in the Red Bud robbery, for which defendant was acquitted. On direct examination Willcutt described the Red Bud robbery; the appearance of the two robbers, and their manner in perpetrating the robbery. He identified defendant as the man who held the gun and pointed out defendant in the courtroom.

On cross-examination Willcutt was interrogated at great length as to his version of the robbery; his description of the robbers, and the manner in which he selected defendant's photograph from the photographs presented to him by the police. During cross-examination, concerning Willcutt's identification of the "mug shot" and without announcing any purpose, defendant's counsel stated to the witness:

"All right. I will now read from your testimony at the preliminary hearing on page 14: starting with the third question on that page."

Defendant's counsel proceeded to read questions and answers from the transcript of the preliminary hearing, for what appears from the record to have been a considerable length of time. He was finally interrupted by the court when the following took place:

"THE COURT: May I interrupt. This does not seem impeachment and the record at the preliminary hearing can only be used for impeachment purposes. The defendant may call this witness for the defendant's case-in-chief if desired. This is not cross examination subject matter raised by the defendant's case-in-chief. It is objectionable for two reasons. Hold it for the defendant's case-in-chief, please. If we are going to furnish transcripts for preliminary hearings we will be careful as to how they will be used—that they will be used as the law provides and not just reading what was said at the preliminary hearing.

"MR. FISHER: I will hold it but the State didn't furnish it.

"THE COURT: It is still immaterial. The law requires the transcript be used for impeachment purpose. This is not impeachment.

"MR. FISHER: Very well."

Obviously, the trial court did not exceed the bounds of discretion in interrupting the reading of the preliminary hearing transcript under the circumstances shown and, furthermore, it appears defendant's counsel acquiesced in the court's ruling rather than claiming prejudice.

Defendant's counsel proceeded with the cross-examination until he commenced interrogating Willcutt concerning the police line-up. At this point the following took place:

"THE COURT: And again pictures shown to him and the lineup is not part of this case-in-chief; not proper subject matter for cross examination. It should be reserved for the defendant's case-in-chief, please.

"Mr. Fisher: Very well. I only wanted to inquire about the description and the identification of this defendant."

If defendant were prejudiced by this interruption he made no such claim at the time.

Defendant's counsel was again interrupted when he attempted to interrogate Willcutt as to whether Willcutt knew a brother of defendant. The basis of the court's interruption was that there was no direct testimony by Willcutt concerning this matter. Our examination of the record reveals the trial court was correct in its version of what was included in Willcutt's direct testimony. Furthermore, we note the trial court observed that defendant could call the witness for his case in chief if he desired. Since no foundation for impeachment was laid and no intention announced, we believe the trial court properly interrupted the reading of preliminary hearing evidence. Nor do we find error in limiting the scope of cross-examination to matters testified about in direct examination.

Evidentiary rules applicable to the examination of witnesses in criminal cases are within the ambit of the civil code. (*State v. Taylor*, 198 Kan. 290, 424 P. 2d 612.) Cross-examination in a criminal case is generally limited to the scope of direct examination, and any exception thereto is a matter discretionary with the court. (*State v. Zeilinger*, 147 Kan. 707, 78 P. 2d 845.)

Defendant further complains that his cross-examination of other identification witnesses, in particular Donald Loibl and Kathy Monte, was unduly restricted. His position is not borne out by the record. The record reflects the trial court from time to time sustained objections where questions were repetitious or beyond the scope of direct examination. We do not find material error in any of these rulings.

Furthermore, it should be noted that the identification witnesses, Loibl, Willcutt and Monte, were recalled for the express purpose of allowing cross-examination as to identification of photographs and matters pertaining to police lineup identifications.

Generally, any error in the exclusion of evidence is cured when the same, or substantially the same, evidence is, through the same or other witnesses, subsequently admitted. (*State v. Zumalt*, 202 Kan. 595, Syl. ¶ 1, 451 P. 2d 253.)

Defendant's next complaint concerns cross-examination of police officers who investigated the robberies.

Officer Liles testified on direct examination concerning his questioning of witnesses to the Dillon robbery. In his direct examination he referred to notes which he had made at the time of the investigation. The notes were contained in a small spiral notebook in which he kept notes relating to all other criminal investigations in which he was involved.

When he commenced his cross-examination of Liles, defendant's counsel requested permission of the court to have the notes to use in cross-examining the witness. Counsel's request was overruled by the court. Putting aside for the moment whether the notes in question could have been separated from the rest of the notebook, which contained notes of other investigations, we shall consider the cross-examination of Liles.

Liles was cross-examined at great length concerning his recollection of what each of the witnesses had told him in describing the appearance of the robbers. He was also cross-examined as to what appeared in his notes in this regard. Discrepancies were developed in the witnesses' description of the clothing worn by the robbers, also to some extent as to height and weight. This testimony was mostly from recollection, rather than from notes made by Liles. He was cross-examined in great detail as to what each witness told him and during the course of such examination he was asked from time to time whether he was testifying from his notes or from his recollection.

On a number of occasions during cross-examination the witness was asked what his notes reflected on the point under interrogation. The witness answered whether the subject of interrogation was covered in his notes and if so the notes in reference to the subject were read. A fair analysis of the extended cross-examination of Liles indicates that, even though counsel did not obtain physical possession of the notes, he became fully informed as to their content.

Near the conclusion of his cross-examination Liles was asked:

"Q. . . . your notes were not made and not entered to help you in any way in recollecting the separate conversations with the witnesses, were they?

"A. No, made for immediate description to put out over the radio."

Thus, it was developed by counsel's own cross-examination that the notes in question did not reflect specific conversations by Officer Liles with each individual witness, but rather were compiled for the purpose of establishing a composite description for radio broad-

cast. In other words, the notes were for the most part conclusions of the witness, rather than accounts of specific statements of each witness, and thus would not have served as a basis for cross-examination of Liles or of any of the identification witnesses.

Detective William Hannon, who was in charge of the investigation of the Dillon robbery, was also examined at great length concerning his investigation and interrogation of the witnesses to the robbery. During the examination it was developed that Hannon had his notes in front of him during his testimony and that he had used his notes to refresh his memory as to time, dates and persons contacted. During the course of his cross-examination the record reflects the following took place:

"Q. Officer, what you have got there in your notes is the only record you have access to that you know of now that will either confirm or contradict what these witnesses have testified about in this case, is that correct?

"MR. HERNANDEZ: Objection. Mr. Fisher, is testifying. I wish he would proceed with the trial under the rules of evidence.

"THE COURT: The objection is sustained.

"Q. Were these personal notes of yours recorded at the time you made these various parts of your investigation, Officer Hannon?

"A. Yes, sir.

"Q. Would you for the purposes of the proffer hand your notes to the reporter and have them marked for identification?

"MR. HERNANDEZ: We will object to any proffer. If he wants to have the notes concerning the direct examination admitted we have no objection, but we do object to any proffer.

"THE COURT: Application may be made for witness' notes. They are not demanded from the witness as a right and it is improper for counsel to ask they be marked without the Court's permission. Please make application in the absence of the jury and I am sure there will be no difficulty. The witness may keep his notes unless he wants to voluntarily turn them over.

"(By Mr. Fisher)

"Q. As I understand it, according to at least your best observation, your brother Floyd Hannon was present in his office while you were gone during the time the conversation took place between Mr. Stewart and Mr. Guffey, wasn't he?

"A. I do not know whether Major Hannon was in the office all during the time that Sergeant Stewart and Mr. Guffey were there or not because I wasn't there.

"Q. All right.

"MR. GRANT: Just a moment, Mr. Fisher . . .

"MR. FISHER: For the record I asked protection from two counsel taking part in objecting to my cross-examination.

"MR. GRANT: I am not making any objection. Back to the original thing you were discussing concerning the notes. We have no objection, your

Honor—Mr. Hannon, if you would like to hand the reporter the notes for the purpose of marking them so that the defendant can use them, I wish you would do so.

"THE COURT: This will please await proper application not at the moment, please. There will be no difficulty about the notes if the application is properly made. There never has been.

"MR. FISHER: Sometimes I get premature, your Honor, and I would like to apologize to counsel for the objection I made. I preconceived what his purpose was.

"THE COURT: All right."

At this juncture the trial was recessed for the night, following which defendant's counsel and the county attorney proceeded to the court's chambers where defense counsel renewed his application to secure the notes of the police officers. The version of defendant's counsel as to what followed is set forth in his affidavit, filed with a motion for mistrial the next morning. The affidavit in pertinent part reads:

"(a) At the evening adjournment on November 13, 1968, the attorney for defendant, having announced that he had concluded cross examination of Detective William Hannon, subject to a reservation to make an application in accordance with the Court's indication during the examination (that application should be made during recess for access to personal notes from which the detective had testified and, as counsel understood, items of property of defendant which had been taken and were being held as evidence but which evidence State did not offer.) The Court excused the witness without reservation and ordered counsel to come to chambers immediately after the adjournment. The attorney for defendant proceeded directly to the door of chambers, knocked, and was admitted, and asked Your Honor if the Court wished to see counsel. Your Honor informed me that he had changed his mind and throught (sic) the Court would work on instructions, and said that the Court wasn't going to permit the defense attorney to see the notes of the officer of cross-examine with them. Counsel then requested the Court to be permitted to make a record, which request the Court orally denied, stating that the record was closed. The court informed the defense attorney that if he wanted to see the notes he should ask the State for them.

"The attorney for defendant proceeded toward the elevators and in the public portion of the hallway there met the two deputy county attorneys trying the case, and after an inquiry from one of them inquired whether the State would make the notes available. During this private conversation between the attorneys, Your Honor came into the hall enroute to the elevators and approached the attorneys, and in loud tones and angry demeanor told the attorney for defendant that the attorney was making a mockery of the trial, that he had no right to make demands for property in official custody of the police, that the notes of the officer were his own private property, stating that the interrogation of the police officers reflected on their integrity and that the Court was not going to stand any more of it. The attorney

for defendant informed the Court that the attorney had no intention to disobey any order of the court and requested only that he be permitted to make a record. Thereupon, the Court orally ordered the attorney for defendant to make no more such demands. Attorney for defendant believes that said oral order applies to the property in the custody of the state which tends to negate the issues which it is the burden of the state to prove, as well as the notes of Officer Hannon from which he testified.

"Said chastisement of and oral orders to the attorney for defendant occurred a minute after 5:00 p. m.; at the commencement thereof other persons were in the area, but left during said occurrence, as defense attorney believes, in embarrassment, until only the Court and this attorney, also embarrassed— but not feeling free to leave—remained. The attorney for defendant does not know whether or not any of said persons were jurors, but certainly feels that said occurrence has made it impossible for this trial to proceed to conclusion without prejudice to a fair trial of defendant because thereof."

Defendant's counsel argues at great length concerning matters which he has set out in his affidavit. He claims the record shows an absolute refusal of the court to allow counsel access to the officers' investigation notes. On the other hand, we note counsel recites that the court, in chambers, stated to him that if he wanted to see the notes he should ask the state for them. We also note the record reflects that during courtroom proceedings, the preceding day, state's counsel stated there was no objection to defendant's use of the notes. Obviously, the state of the record on this point is not conducive to a very clear understanding.

The record, other than in counsel's affidavit, does not reflect any request of state's counsel for use of the notes and state's counsel declares that no such request was made.

Generally, an opposing party or counsel has the right, on proper demand, to inspect and use for cross-examination any paper or memorandum used by a witness for the purpose of refreshing his memory upon matters testified about; but an accused has no right to the inspection or disclosure of information in possession of the prosecution which may be designed for use in the prosecution of others. (*State v. Oswald,* 197 Kan. 251, 417 P. 2d 261.)

In the case of each officer, the notes were contained in the officer's notebook which included notes relating to other criminal investigations. Arrangements would have been necessary to separate them from the other contents of the notebooks.

In view of the exhaustive cross-examination revealed by the record, we believe defendant's counsel, as a practical matter, was fully informed as to the content of the notes in question and thus

actual physical possession of them was of no consequence. Furthermore, as we have indicated, defendant's counsel apparently did not pursue the offer of state's counsel to make the notes available. We do not believe counsel's failure to secure actual physical possession of the notes, whether by reason of his own failure to fully pursue the matter or because of the import given to the trial court's rulings, is a sufficient showing under this record to constitute prejudice of substantial rights.

Defendant's counsel directs our attention to his recitation of the court's conduct during the hallway encounter. The affidavit was set out in defendant's motion for mistrial, which was presented to the court the following day. Defendant contends the conduct of the court in rebuking counsel, as recited in the affidavit, is sufficient to show prejudice amounting to reversible error in the denial of defendant's motion for mistrial. We have only defendant's counsel's version of the incident. The state says:

". . . The state did not at that time nor does it now believe that an affidavit in contradiction to some of the Appellant's allegations is necessary to rebut what occurred extrajudicially, after adjournment of Court, out of the presence of the Jury, off of the record, and out of the Courtroom, could possibly have deprived the defendant of a fair trial or prejudiced his rights. It should further be pointed out that the defendant was not present also.

"The Trial Court, furthermore, did not err in refusing to make a record or order as to what happened in chambers or in the hallway the night before. Court was in adjournment at that time, and the order, if any, was the same as was already reflected in the record, to-wit: defendant was not entitled to an examination of the police officers' notes. Defendant did not at any time present to the Court any authority to the contrary."

If the court's conduct was as recited in the affidavit of defendant's counsel it amounted to a departure from judicial decorum, but as pointed out by the state it occurred out of the courtroom, out of presence of the jury and after adjournment and it could not have prejudiced any rights of the defendant. If a juror had been present in the hallway such fact could have easily been established by defendant. In support of his argument defendant cites the case of *State v. Bean,* 179 Kan. 373, 295 P. 2d 600. In *Bean* a judgment of the trial court was reversed because of misconduct by the court, but it was in the presence of the jury. The decision is not applicable to the instant case. Likewise, cases from other jurisdictions cited by defendant deal with a court's remarks in the presence of the jury.

Defendant makes one further contention concerning the trial court's rulings on evidence. Baletina White was called by the

state. She testified that she lived with defendant at a trailer court in Wichita and worked with him at the Chicken Acres Plant. She testified that on the way to work on the morning of February 8, 1968, around 6 or 6:30 a. m., (the morning after the Dillon robbery), defendant gave her $100.00, consisting of eight ten dollar bills and four five dollar bills. Defendant had never given her money before and she had never seen him with any sizeable sum of money except on pay day.

The money in question was received in evidence over defendant's objection and he claims error citing *State v. Ragland*, 170 Kan. 346, 226 P. 2d 251. Defendant's contention is without merit. In *Ragland* the state's case for burglary and larceny was based solely on circumstantial evidence. This court found error when the state sought to introduce testimony of funds in accused's possession to serve as a basis for drawing an inference from other circumstantial evidence. The decision is not applicable here—where direct testimony establishes the money was in defendant's possession the morning after a robbery in which he was identified by four eyewitnesses.

The general rule is found in 29 Am. Jur. 2d, Evidence, § 291:

"In a criminal prosecution, where there is other evidence of the guilt of the accused and the crime is of such a nature that the acquisition of money may be regarded as a natural or ordinary result of its perpetration, evidence is admissible of the sudden acquisition of money by the defendant, or of a marked improvement in his financial condition at or subsequent to the time the offense was committed, although the source of the money is not definitely traced or identified by the prosecution. . . ." (p. 337)

The rule stated prevails in most jurisdictions. (See 91 A. L. R., Anno., p. 1048; and also *State v. Grebe*, 17 Kan. 458)

Defendant complains that a record was not made of proceedings in chambers during the trial and that the court refused to have a record taken of arguments on the motion for new trial. Defendant does not contend that any part of the trial or any communication of the judge, with the exception of orientation proceedings, that took place in the presence of the jury, was not recorded.

At this point, we pause to repeat an observation of this court made in the recent case of *State v. Earsery*, 199 Kan. 208, 428 P. 2d 794:

". . . For the sake of everyone concerned, litigant, counsel, trial court, and this court as well, upon appeal, every communication between judge and jury should take place in the presence of and be recorded by the official court reporter." (p. 213)

Although the better practice is to record colloquy between court and counsel pertaining to any matters of substance in connection with a trial, such procedure is not mandatory. The advantages of a complete record for purposes of appellate review are obvious and make unnecessary attempts to establish a record by affidavit, such as was resorted to in this case.

The controlling statute is K. S. A. 20-903. It requires the official court reporter to attend all sessions of the court, of which he is a reporter, and to take full stenographic notes of the evidence and oral proceedings in cases tried before the court as the judge thereof shall direct. While the recording of oral arguments and other oral proceedings may be said to be the better practice, the recording of such proceedings, in the absence of the jury, is not mandatory but discretionary with the trial judge and failure to make a record of such proceedings cannot be said to amount to reversible error.

Next defendant objects to Instruction No. 6. This instruction cautioned the jury to consider only evidence which had been presented in the case and not to concern itself or speculate as to evidence it felt might have been presented and was not. The instruction further advised that a juror is not compelled to adhere to a point of view once arrived at, if he is convinced after consultation with his fellow jurors, that his previous opinion concerning law or facts was erroneous. Defendant does not support his argument with any authorities. Considering the instruction in the light of all the instructions given, we do not find it unfair or prejudicial.

Lastly, defendant contends the court improperly considered a previous conviction for violation of the Federal Mann Act (18 U. S. C. A. § 2421) in enhancing the sentence imposed pursuant to the provisions of K. S. A. 21-107a. He claims the evidence insufficient to show the conviction or that the offense amounted to a felony. His contention is not supported by any argument in his brief, nor is the authenticated copy of the conviction, shown by the record to have been introduced, included in the abstract on appeal. We are, therefore, unable to consider defendant's contention with respect to the evidence of the conviction. However, we have examined the statutes pertaining to the offense charged and find it to be a felony (18 U. S. C. A. § 1).

Defendant's industrious counsel has presented many alleged trial and procedural errors. However, he makes no contention that the evidence was insufficient, nor does he claim any infringement of constitutional rights.

Defendant was positively identified as the man with the gun in the Dillon robbery by four eyewitnesses who were subjected to exhaustive cross-examination without material damage to their testimony. His own admissions, though refuted by defendant at the trial, were found to have been voluntarily made by the trial court in a proper proceeding and must have been, in part at least, accepted by the jury, because defendant's admission as to the disposition of the gun and his description of it as a "toy pistol" appears to be the only evidence in the record which would account for the jury's acquittal for possession of a firearm. Such evidence of guilt must be evaluated as overwhelming.

Although constitutional rather than trial errors were the subject of *Chapman v. California*, 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, and the further discussion thereof in *Harrington v. California*, 395 U. S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; we have, nevertheless, considered the admonition of those cases against giving too much emphasis to "overwhelming evidence of guilt" in the application of the harmless error rule.

We have repeatedly said that every accused is entitled to one fair trial, but we have qualified that statement by further stating that a fair trial does not mean a perfect trial.

While this was not a perfect trial, we are convinced from our careful examination of the total record that defendant has failed to affirmatively show prejudice of reversible weight, nor has he shown that any of the matters complained of actually contributed to his conviction.

The judgment is affirmed.

FATZER, J., dissenting: It is evident from the record that the defendant did not receive a perfect trial, which the court concedes, but I am compelled to conclude he did not receive a fair trial, and must respectfully dissent.

This case in some respects is like that of *State v. McLemore*, 101 Kan. 259, 166 Pac. 497, where a number of errors were committed, none of which standing alone were held to warrant reversal, but, when considered together, constrained the court to the conclusion the defendant did not receive a fair trial, and a new trial was ordered.

FONTRON, J., joins in the foregoing dissent.