No. 47,572

THE STATE OF KANSAS, *Appellee*, v. JIM SCHOENBERGER, *Appellant.*

(532 P. 2d 1085)

Opinion filed March 1, 1975.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellant.

*Robert L. Earnest,* special assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Michael S. Holland,* county attorney, were with him in the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal emanates from a conviction of aggravated assault under K. S. A. 21-3410 and the imposition of a sentence of from one to ten years.

The incident giving rise to the criminal charge occurred Octo-

ber 13, 1973, during a street fracas in Russell, Kansas. Two groups were involved, three young black brothers on one side, members of the Murphy family, and the defendant and his friend Leslie Rumback, both white, on the other.

By way of background, the defendant and Rumback had been engaged in working on the defendant's car earlier in the day. After completing the job that evening they purchased a pack of beer and drove into the country to test the car. They returned to Russell somewhere around 10:30. At this time George Murphy, who was sixteen years of age, was driving around town with his girl, who was fifteen. According to George, the defendant and his companion began to follow him, and one of them threw a bottle which hit his car. George drove home, followed by the two men, and told his two brothers, Gregory and Edward, what had happened. Profanities were yelled back and forth, it being disputed as to who initiated the uncomplimentary name calling.

After the exchange of obscenities the three Murphys decided to go out and talk with defendant and Rumback to find out what they wanted. In the interest of prudence, they provided themselves with wine or coke bottles. The defendant and his friend repaired to the former's home where Schoenberger procured either a butcher knife or a steak knife and Rumback, a knife with a broken point.

Apparently the two sets of putative combatants began looking for each other, although the record is somewhat vague as to their movements up to the time the Murphys drove their car around a corner, pulled over to the curb and stopped. At this juncture the Schoenberger car was following the Murphy car and it, too, pulled around the corner and over to the curb where it came to a stop behind the Murphys' vehicle. All occupants left their cars, Schoenberger and Rumback with knives, and at least two of the Murphys with bottles.

As the defendant emerged from his car, according to the Murphys, he said something to the effect that "We are going to spill some niggers' guts tonight." Schoenberger denied saying these exact words. He phrased what he said this way: "It looks like we are going to have to fight some niggers." From this point on there is some conflict in the testimony as to what occurred. However, it appears there was little if any physical contact between members of the groups except as between the defendant and Edward Murphy, and there are contradictory versions of that encounter.

Nevertheless, the evidence is persuasive that Schoenberger went after Edward Murphy with knife in hand, made several "swipes" at Edward which were sidestepped, and was restrained only when Edward was able to grab hold of the defendant's hand which held the knife.

The appearance of George Murphy with a loaded double-barrelled shotgun, which he had run home to pick up, put an end to the donnybrook. Schoenberger and Rumback retired from the scene in haste while the Murphys, after hurling a bottle against defendant's car, repaired to the police station.

Four points of error are urged. First, it is said the trial court erred in overruling the defendant's motion to exclude the witnesses from the courtroom during the trial. In support of this motion, defense counsel informed the court that conflicting stories were told at the preliminary hearing and he thought the witnesses would give conflicting accounts at the trial.

This court adheres to the generally prevailing rule that the exclusion of witnesses during trial rests within the sound discretion of the trial court. (See *State v. Guffey*, 205 Kan. 9, 15, 468 P. 2d 254, and authorities therein cited.) Restating this rule in *State v. Theus*, 207 Kan. 571, 485 P. 2d 1327, we said:

"Generally speaking, the question of whether to exclude witnesses or not, and what exceptions may be made, is discretionary with the trial court in the absence of a showing of prejudice. . . ." (p. 577.)

Our attention has not been called to any prejudice resulting from the court's ruling and our search of the record reveals none. The defendant was represented at the trial by the same counsel who appeared in his behalf at the preliminary hearing, and we presume he was well acquainted with the testimony which the witnesses had to offer. No reason is suggested why counsel would not have been fully capable of examining prosecution witnesses with respect to contradictions or inconsistencies occurring in their testimony.

We are well aware of the following statement which is found in the *Guffey* opinion:

". . . [O]n proper application, timely made, exclusion of witnesses is generally allowed and we believe it to be the better practice." (p. 16.)

The observation is as timely today as when penned by Mr. Justice Kaul in the *Guffey* case. Where a motion for exclusion of witnesses has been filed seasonably, and there are no exigent circumstances which necessitate their presence in the courtroom, we

believe it desirable that the motion be sustained. However, as previously indicated, there is naught in the present record to suggest that any witness was influenced in his testimony by the presence of other witnesses in the courtroom. There is, in other words, a complete absence of any showing of prejudice (*McCrossen v. United States,* 339 F. 2d 810) and we cannot say that discretion was abused.

In the second place, defendant asserts the court erred in failing to define "intentionally" as that word was used in instruction number one. That particular instruction was based on PIK 56.14 and it sets out what the state was required to prove to establish its case. The first claim the state must prove, said the court, was "that the defendant *intentionally* attempted to do bodily harm to Edward Murphy." We find little merit in the defendant's contention. "Intentionally" is a word in common everyday usage. It threads itself through all walks and areas of life, ordinary as well as specialized. Both lay and legal dictionaries give its meaning as purposely, voluntarily, designedly, willfully. It connotes lack of accident; it denotes the exercise of free will. So widespread is its usage that we have the notion its meaning is readily comprehensible to the average person without further definition or refinement. It can be said that the record in this case nowhere reflects that members of the jury lacked understanding of the term or were confused as to its import.

For his third ground of error the defendant points to the court's refusal to give a self defense instruction. He allots only three lines to this point in his brief, and cites no authority. On oral argument he was equally terse. Even so, the point deserves brief attention. As a general rule we believe it may be said that where the accused has not retreated from or avoided the combat but has entered the affray willingly, he is in no position to invoke the doctrine of self defense. (*State v. Baker,* 280 Minn. 518, 160 N. W. 2d 240; *Lewey v. State,* 28 Ala. App. 245, 182 So. 98.) However, even where the conflict is mutual, an instruction on self defense should be given where it comes within the range of the evidence. (*People v. Sherman,* 14 Mich. App. 720, 166 N. W. 2d 22.)

In refusing to instruct on self defense, the trial court commented that the white boys were the pursuers. The evidence, indeed, leads to this conclusion. Schoenberger conceded he was following the Murphys; that he had the choice of turning the corner and following them or of going on down the street; that there was

nothing to prevent him from leaving; and that it took a shotgun to make him and Rumback leave the scene. Looking at the overall situation we find no occasion to fault the court in rejecting an instruction on self defense. The posture of Schoenberger can be described only as one of aggression throughout the entire encounter.

Finally, the defendant argues, the court was wrong in refusing to instruct on simple assault as a lesser included offense of aggravated assault. The rule requiring an instruction on a lesser included offense becomes applicable only where it is clearly called for by the evidence and where the jury might reasonably have convicted the accused of a lesser crime had it been instructed with regard thereto. (*State v. Masqua,* 210 Kan. 419, 424, 502 P. 2d 728, and cases cited therein.) Here, the evidence was uncontradicted (1) that defendant was armed with a knife during the fracas; (2) that he made several swipes at Edward; and (3) that he was deterred by Edward grabbing his hand and arm. We deem the evidence compelling that whatever assault was made on Edward was accompanied by a deadly weapon, to wit, a large knife, and thus was aggravated in its very nature. (K. S. A. 21-3410.) Under these circumstances an instruction on simple assault was not required, and the court did not err in rejecting the defendant's request therefor.

We find no prejudicial error in this case and the judgment of the trial court is affirmed.